382 Mass. 19 (1980)
413 N.E.2d 727
CONSTANCE G. CONLON
vs.
DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY.
Supreme Judicial Court of Massachusetts, Middlesex.
October 7, 1980.
December 1, 1980.
Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.
Francis X. Bellotti, Attorney General, & George J. Mahanna, Assistant Attorney General, for the defendant, submitted a brief.
WILKINS, J.
At issue here is the question of the extent to which personal domestic responsibilities are relevant in determining whether an individual is entitled to unemployment benefits. The board of review (board) denied unemployment benefits to the claimant (Conlon) because she restricted her availability for work to a daytime shift which was consistent with her fulfilment of responsibilities to her children.
A District Court judge reversed the board's determination and ordered the payment of benefits. We agree that the board erred in its decision but conclude that the proceeding must be remanded to the Division of Employment Security *20 (division) for findings in light of principles we set forth in this opinion.
The board, adopting the decision of the review examiner, found that Conlon worked as a nurses' aide in a nursing home from 1975 until April, 1979, when the employer terminated operations. Conlon sought and received unemployment benefits, but those benefits were terminated when Conlon indicated that she was available for work only on the 7 A.M. to 3 P.M. shift. At the hearing, Conlon explained that she had six children whose ages ranged from seven to seventeen and that her husband was a fireman who was required to work nights. She was not willing to leave the children without parental supervision at night, and, therefore, restricted her availability to the day shift.
The board affirmed the decision of the review examiner and ruled that to meet the availability requirements of G.L.c. 151A, § 24(b), "the person claiming benefits must be willing and able to work full time on any shift normally operated in the occupation for which she is suited by training and experience." The board denied Conlon benefits, concluding that, by her unwillingness to work all shifts other than the day shift, she had eliminated a major portion of her employment opportunities and had failed to meet the availability requirements of § 24(b).
On Conlon's appeal, the District Court judge reversed the board's decision. He concluded that the board's focus solely on the availability standard of § 24 (b) was improper because it failed to recognize that a person must be available only for employment that is "suitable employment" within the meaning of § 25 (c). He ruled, as a matter of law, that Conlon was entitled to benefits from the date those benefits were terminated until August 27, 1979, when she secured employment (incidentally, within hours acceptable to her). The director of the division appeals from that decision.
The question whether a person who refuses work at certain hours because of domestic responsibilities is entitled to unemployment compensation has not been answered in this State. It has been answered variously in other jurisdictions. *21 See Annot., 35 A.L.R.3d 1129, 1137-1145 (1971 & Supp. 1980), where cases are collected. The tendency in earlier opinions was to focus on the general requirement that a person must be "available" for work in order to be eligible for compensation. These opinions held that restricting one's employability to certain times of day because of child care duties rendered the individual unavailable for work. The theory was that the individual "must be exposed unequivocally to the labor market," Leclerc v. Administrator, 137 Conn. 438, 439 (1951), and willing to work during all hours "as are customary in the type of employment to which he is suited," Swanson v. Minneapolis-Honeywell Regulator Co., 240 Minn. 449, 456 (1953). See, e.g., York v. Morgan, 16 Or. App. 76 (1973); Judson Mills v. South Carolina Unemployment Compensation Comm'n, 204 S.C. 37 (1944); Aladdin Indus. Inc. v. Commissioner, 219 Tenn. 71 (1966). Cf. Ford Motor Co. v. Unemployment Compensation Comm'n, 316 Mich. 468, 472 (1947), where the statute required the unemployed person to be available for appropriate work "full-time."
More recent opinions have focused less exclusively on availability and have broadened the inquiry to include consideration of statutory language that requires the individual to be available only for "suitable" employment which he has no "good cause" to refuse. The issue with respect to domestic responsibilities has been whether domestic responsibilities could constitute "good cause." Since the Massachusetts Employment Security Law has language of this type,[1] the analysis in these cases is useful here.
*22 Some jurisdictions have adopted a narrow definition of good cause. The Supreme Court of Minnesota has limited good cause to reasons which are of a "temporary and emergency character" (emphasis in original), and to justifiable reasons pertaining to the particular job. Swanson v. Minneapolis-Honeywell Regulator Co., 240 Minn. 449, 457-458 (1953). Vermont has maintained a narrow view of the meaning of "good cause," by reading into "good cause" in the applicable statute the qualifying words found in the separate statutory disqualification of a person who leaves his employment "without good cause attributable to [the employer]." In re Prouty, 131 Vt. 504 (1973), relying on Nurmi v. Vermont Employment Security Bd., 124 Vt. 42, 47-48 (1963).
Numerous courts, certainly the majority that have dealt with the question in recent years, have concluded that the refusal to seek or accept work at certain times because of family responsibilities may constitute "good cause" to decline suitable employment and does not necessarily make the employee unavailable for work. See Arndt v. State, 583 P.2d 799, 802-803 (Alaska 1978); Sanchez v. Unemployment Ins. Appeals Bd., 20 Cal.3d 55, 69-70 (1977); Yordamlis v. Florida Indus. Comm'n, 158 So.2d 791 (Fla. Dist. Ct. App. 1963); Tung-Sol Elec. Inc. v. Board of Review, 35 N.J. Super. 397, 401-402 (1955); In re Watson, 273 N.C. 629, 635 (1968); Huntley v. Department of Employment Security, R.I. , - (1979) (397 A.2d 902, 905-906 [R.I. 1979]). See also Trexler v. Unemployment Compensation Bd. of Review, 27 Pa. Commw. Ct. 180, 183-188 (1976), which has a statutory basis for the definition of "good cause" adopted by the court.
*23 Although "good cause" in § 25 (c) has not been interpreted in Massachusetts, the words "good cause" appear elsewhere in c. 151A and may, in those contexts, include personal reasons of the employee. Section 25 (e) provides, in part, that benefits are to be denied in certain circumstances if the employee "has left his work (1) voluntarily without good cause attributable to the employing unit." G.L.c. 151A, § 25 (e), as appearing in St. 1975, c. 684, § 78. In this form, good cause must relate to the employer and thus personal reasons for leaving employment cannot constitute "good cause." For a period from 1958 (see St. 1958, c. 677) to 1969 (see St. 1969, c. 614, § 2), § 25 (e) denied benefits to one who left work "voluntarily without good cause." During this period "good cause" was not limited to "good cause attributable to the employing unit," and certain personal reasons for quitting work could constitute good cause. See Raytheon Co. v. Director of the Div. of Employment Security, 346 Mass. 733, 735-736 (1964); Raytheon Co. v. Director of the Div. of Employment Security, 344 Mass. 369, 373-374 (1962). For other provisions in G.L.c. 151A, referring to "good cause," which in the context may include personal reasons, see §§ 25 (a), 39 (b).
We see no reason not to give the words "good cause" their usual meaning and thus to recognize that, in certain circumstances, "good cause" may include personal reasons. In doing so, we follow the recent trend in those other jurisdictions, discussed earlier, that have dealt with the same general issue. Moreover, this conclusion recognizes that, when the Legislature intended to limit "good cause" to matters relating to the employment, it did so by explicit, additional language. See In re Watson, 273 N.C. 629, 635 (1968); Trexler v. Unemployment Compensation Bd. of Review, 27 Pa. Commw. Ct. 180, 187-188 (1976). Although this court has not been confronted previously with a case involving a question of "good cause" under § 25 (c), we have noted an employee's right to refuse suitable employment if he has good cause to do so. See Farrar v. Director of the Div. of Employment Security, 324 Mass. 45, 49 (1949).
*24 It is apparent from what we have said that the board erred in concluding that "the person claiming benefits must be willing and able to work full time on any shift normally operated in the occupation for which she is suited by training and experience." The ruling that, as a matter of law, Conlon was unavailable for work cannot stand. The question whether Conlon so limited her employability as in fact to make herself unavailable for work is a question for the board to consider on the record on remand.[2]
Although we reject the board's conclusion, we do not accept the judge's implied conclusion that, as a matter of law, work at other than times acceptable to Conlon was not "suitable employment." This is a factual question in the first instance on which the board should act and as to which, in reviewing an administrative decision, a judge may not make findings of fact. See Pacific Mills v. Director of the Div. of Employment Security, 322 Mass. 345, 350 (1948). Identical work at a time not acceptable to Conlon could well be suitable employment, although § 25 (c) requires "consideration whether the employment is detrimental to the health, safety or morals of an employee."[3] The *25 judge was correct in recognizing that § 25 (c) bears on the question whether domestic responsibilities may justify a refusal to seek or to accept work at certain times of day. But it is the language in § 25 (c) concerning "good cause" rather than "suitable employment" which must be addressed.[4]
On remand, the board should first consider whether Conlon was "without good cause" in declining to seek or accept employment at any other time of the day than she did. If she did not have good cause for so limiting her availability, benefits were rightly denied. Finally, if Conlon did have good cause to decline suitable employment, the board must consider whether she still was available for work within the meaning of § 24 (b). If she limited her availability so that she effectively removed herself from the labor force, benefits must be denied even if she had a valid personal reason for doing so. Keough v. Director of the Div. of Employment Security, 370 Mass. 1, 4 (1976).
The judgment is reversed. Judgment shall be entered remanding the proceeding to the Division of Employment Security for further consideration in light of this opinion.
So ordered.
NOTES
[1] General Laws c. 151A, § 24 (b), as appearing in St. 1941, c. 685, § 1, provides in pertinent part that: "An individual, in order to be eligible for benefits under this chapter shall ... (b) Be capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted." General Laws c. 151A, § 25 (c), as appearing in St. 1976, c. 473, § 19, provides further in pertinent part that: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for  (c) Any week in which an otherwise eligible individual fails, without good cause, to apply for suitable employment whenever notified so to do by the employment office, or to accept suitable employment whenever offered to him...." We have said that § 25 explains, amplifies, and qualifies § 24, Pacific Mills v. Director of the Div. of Employment Security, 322 Mass. 345, 351 (1948), and that if the work offered is not suitable under § 25, it must be deemed not to be work for which the employee is reasonably fitted under § 24. Id. It is clear from reading these two sections together that in order to be eligible for benefits an individual need only be available for suitable employment which he has no good cause to refuse.
[2] For cases in which a finding of "unavailability" was warranted, see, e.g., Keough v. Director of the Div. of Employment Security, 370 Mass. 1, 4 (1976) (employee's availability to work only within walking distance of her home or where a ride was available "so restricted her employability as to remove herself from the labor force"); Screnci v. Director of the Div. of Employment Security, 353 Mass. 700 (1968) (restriction to particular job where no such job available); Conley v. Director of the Div. of Employment Security, 340 Mass. 315 (1960) (claimant made little effort to secure work); Pizura v. Director of the Div. of Employment Security, 331 Mass. 286 (1954) (restriction to employment equally as desirable as former job); Corrado v. Director of the Div. of Employment Security, 325 Mass. 711 (1950) (restriction to work in a two or three person office); Farrar v. Director of the Div. of Employment Security, 324 Mass. 45 (1949) (restriction to particular job with no good prospects of securing such a job).
[3] At the time of the hearing, clause (4) in the third paragraph of § 25 (c) excluded from the definition of "suitable employment" new work requiring a woman to work between the hours of midnight and 6 A.M. This provision in § 25 (c) was repealed in St. 1980, c. 131, § 10, perhaps because of concern over its constitutionality under the State's Equal Rights Amendment.
[4] There may be a question here whether employment in the same type of work but at a different time is "suitable employment" as defined in § 25 (c), although that issue does not appear to have been raised apart from the effect of Conlon's domestic responsibilities.