NURSING SERVICES, INC., Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

No. 84–1361.

District of Columbia Court of Appeals.

Submitted Dec. 17, 1985.

Decided July 28, 1986.

Michael R. Murphey, Washington, D.C., was on brief, for petitioner.

N. Denise Wilson-Taylor, Washington, D.C., was on brief, for respondent. Grace Lockett Rosner, Washington, D.C., also entered an appearance for respondent.

Before PRYOR, Chief Judge, and BEL-SON and TERRY, Associate Judges.

TERRY, Associate Judge:

Brenda Gross, a licensed practical nurse, applied for unemployment compensation benefits, alleging that she had been laid off from her position with Nursing Services, Inc. (NSI), for lack of available work. A claims examiner awarded her benefits. When NSI appealed, an appeals examiner upheld the award, with one small modification. The appeals examiner's decision was affirmed by the Office of Appeals and Review of the Department of Employment Services. NSI now seeks review of the Department's decision. It contends that the restrictions which Mrs. Gross imposed on the types and hours of employment she would accept made her unavailable for work, and therefore ineligible under D.C. Code § 46–110(4) (1981) for unemployment benefits.[1] Because the appeals examiner failed to make findings of fact on several contested issues of fact, we vacate the decision under review and remand the case to the Department for further proceedings.

## I

NSI is a temporary health care agency which employs between 500 and 1000 nurses. It provides temporary personnel, upon request, to hospitals and nursing homes that find themselves in need of extra nursing staff. It also makes nurses available for private duty care. The needs of its client hospitals determine the number of hours worked by each nurse, none of whom are guaranteed forty hours of work a week.

At the hearing before the appeals examiner, Charlene Booker, NSI's associate director of nursing, testified about her efforts to schedule Mrs. Gross for work. For

1. D.C.Code § 46–110 (1981) provides in pertinent part:

An unemployed individual shall be eligible to receive benefits ... only if it has been found by the [Department]:

\* \* \* \* \* \*

(4) That [she] is *available for work* and has registered and inquired for work at the employment office designated by the [Department] ... Provided, that failure to comply with this condition may be excused by the [Department] upon a showing of good cause for such failure.... [Emphasis added.]

about four months prior to the hearing, Mrs. Booker had tried on several occasions to get in touch with Mrs. Gross in order to set up work shifts for her. Her attempts were all unsuccessful, either because Gross' telephone was not working or because no one answered the phone. Specifically, Mrs. Booker testified that she had attempted to reach Mrs. Gross on March 7, 15, 16, and 17, April 17 and 26, and every day from May 4 through May 11, 1984, but was unable to contact her. Booker said that Gross was still employed by NSI and that work was still available for her if she could be reached.

Mrs. Gross testified that she had been employed by NSI for four years, and that for most of that time she had worked thirty-two to forty hours per week. In January 1984, however, NSI began cutting down the number of shifts everyone received because of a decreased demand from the hospitals. As a result, Gross said, she was no longer receiving a sufficient amount of pre-scheduled work to support her family. In an attempt to get more hours, Mrs. Gross started putting herself "on call," which meant that she would be available for work on short notice.

With regard to her availability for work, Mrs. Gross testified that because of family commitments, she could work only the 3:00-to-11:00 p.m. shift and the twelve-hour weekend shifts, from 7:00 a.m. to 7:00 p.m. on Saturdays and Sundays. She did not work the night shift because of her need to care for her children. She admitted that she had canceled two shifts in January and February 1984 because of her children's health problems, but she disputed Mrs. Booker's testimony that she had canceled other scheduled work assignments. She claimed she had not been scheduled for work at all in February, March, or April, and she was unable to explain why she could not be reached when work became available during those months. During the day, she testified, she was generally at home and thus able to receive telephone calls.

Leapha Jones, who was also a licensed practical nurse, testified on Mrs. Gross' behalf. Mrs. Jones said she had been working for NSI since 1982 and that since January 1984 the amount of available work had diminished. On one occasion in April, Mrs. Jones received a telephone call from Joy Rubinstein of NSI inquiring about Mrs. Gross. Rubinstein told her that she had been unable to reach Mrs. Gross to inform her of two available work shifts. Jones also explained that when she was on call, it was not unusual for her to receive calls at home for scheduling work shifts. "If I am home and if she [Joy Rubenstein] can get to me and if I am available for that, then I go ahead and take it."

On rebuttal, Mrs. Booker acknowledged that hospital work for licensed practical nurses had been slow, and that as a result NSI had placed some licensed practical nurses in private duty home care. In questioning Mrs. Booker, Mrs. Gross said that she chose not to do private duty work because she could not afford the $25 insurance premium and because she felt "insecure" about doing it. Mrs. Booker could not state whether Mrs. Gross would have a full shift if she were willing to take private duty cases.

The appeals examiner concluded that Mrs. Gross was entitled to receive benefits, but that one week of her eligibility should be deducted because she was unavailable for one week in May when her child was in the hospital. The Office of Appeals and Review upheld the appeals examiner's decision.

II

The appeals examiner's decision in a case such as this must contain findings of fact and conclusions of law, both of which "shall be supported by and in accordance with the reliable, probative, and substantial evidence." D.C.Code § 1–1509(e) (1981); see also 18 DCRR §§ 4609.2–4609.3 (1983). To meet these requirements, "(1) the decision must state findings of fact on each material, contested factual issue; (2) those

findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings." *Perkins v. District of Columbia Department of Employment Services*, 482 A.2d 401, 402 (D.C.1984); *accord, e.g., Citizens Ass'n of Georgetown v. District of Columbia Zoning Commission*, 402 A.2d 36, 41 (D.C.1979).

In this case, the appeals examiner failed to make findings of fact on four contested issues: (1) whether Mrs. Gross received the telephone calls concerning offers of work shifts which Mrs. Booker claimed she had made, or whether she canceled these shifts after initially accepting them; (2) whether Mrs. Gross made a good-faith effort to get a baby-sitter on those occasions when she had an opportunity to work,[2] *see National Geographic Society v. District Unemployment Compensation Board*, 141 U.S.App. D.C. 313, 320, 438 F.2d 154, 161 (1970); (3) whether Mrs. Gross' refusal to obtain the necessary insurance coverage for private duty care was reasonable under the circumstances; and (4) whether private duty work was available for her during the period in question. These issues must be resolved before we can determine whether Mrs. Gross was or was not "available for work" within the meaning of D.C.Code § 46–110(4) (1981). *See Perry v. Police & Firemen's Retirement & Relief Board*, 451 A.2d 88, 90 (D.C.1982).

"If the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Colton v. District of Columbia Department of Employment Services*, 484 A.2d 550, 552 (D.C.1984) (citation omitted). Accordingly, we vacate the order under review and remand this case to the Department for the entry of additional findings by the appeals examiner on the four issues we have identified. The examiner may base his findings on the record previously made, or he may in his discretion reopen the proceedings and receive additional evidence.[3] He shall then rule *de novo* on Mrs. Gross' claim for unemployment benefits. His ruling shall be subject to the usual rights of appellate review.

*Vacated and remanded.*

---

**2.** Given our disposition of this case, we need not decide whether parents may be ruled ineligible for unemployment compensation benefits when their availability for work is restricted by child care responsibilities, or whether such responsibilities constitute "good cause" under D.C.Code § 46–110(4) (1981). We express no opinion on the subject. We note, however, that in other jurisdictions—unlike the District of Columbia—the legislature has provided some guidance to the courts on this issue. *See, e.g., Trexler v. Unemployment Compensation Board of Review*, 27 Pa.Commw. 180, 183–189, 365 A.2d 1341, 1344–1346 (1976). *See generally Conlon v. Director of Division of Employment Security*, 382 Mass. 19, 413 N.E.2d 727 (1980).

**3.** If the original appeals examiner is no longer available, however, a new evidentiary hearing must be held. *See Stevens Chevrolet, Inc. v. Commission on Human Rights*, 498 A.2d 546 (D.C.1985).