Brady, J.
Plaintiff Joanna Upton (Upton) filed this action against defendant JWP Businessland (JWP), a Delaware Corporation doing business in Canton, MA, following the termination of Upton from her employee at-will management position a few months after she was hired. Upton advances three claims against JWP: wrongful termination of her at-will employee position in violation of public policy (Count I); breach of an employment contract (Count II); and estoppel based on detrimental reliance (Count III). JWP moves for summary judgment under Mass.R.Civ.P. 56. For the following reasons, JWP’s motion for summary judgment is allowed.
BACKGROUND
The Court accepts the following facts for the purpose of this motion.
Upton is a single mother of a boy who was six (6) years old at the time Upton was hired for and terminated from a management position by JWP in 1991. During Upton’s pre-employment interviews, various JWP employees informed Upton that the management position required working from 8:30AM to 5:30PM, often with either working through lunch or missing lunch entirely, and working late attending meetings a couple of nights per month. During the interviews, Upton informed JWP and its employees that she was a single mother and needed to verify her work schedule in order to make appropriate child care arrangements for her son. Her employment application form listed extensive managerial work experience and an ability to assume “large amounts of responsibility.” Upon being offered and accepting the job, Upton signed an express written acknowl-edgement that her employment with JWP would be as an employee-at-will.
Upton began working for JWP in April 1991 in JWP’s Canton office, where she was the only employee who was a single mother and had a small child at home. Shortly after beginning her employment, Upton commenced working until 6:30PM to 7:00PM at night because of her workload. An adverse and noticeable effect, according to Upton, occurred in her son’s behavior as a result of her long work hours.
On June 4, 1991, Upton’s son was ill and Upton took the day off from work because she could not arrange for appropriate child care for her son. On June 4, coincidentally, JWP announced that it was merging with a business competitor. On June 5, 1991, Upton returned to work.
While her working relationship with her female supervisor prior to June 4 was deemed amicable by Upton, she noticed a marked change in the supervisor’s demeanor upon the return to work. According to Upton, her supervisor became “hostile” toward Upton, began to pile on extra work on Upton, began to actively oversee everything Upton was doing, and also commenced countermanding Upton’s decisions. Further, the supervisor placed her on “probation” and gave a critical review of Upton’s work performance, although Upton had received favorable feedback from the supervisor before June 4.
In late July 1991, in preparation for the actual merger announced on June 4, JWP announced that all employees would have to work until 10:00PM each night and all day on Saturdays for an indefinite period of time, possibly as long as the next several months. Upton informed the supervisor that she could not work such hours because of her responsibilities as a single parent. While the supervisor stated that she “was aware” of Upton’s situation, the supervisor made no other comments concerning Upton’s situation. Two weeks thereafter, Upton was terminated from employment. JWP stated that the reason for Upton’s termination was that she “was not a good fit” with JWP’s executive staff.
DISCUSSION
Summary judgment under rule 56 “mak:e[s] possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983), quoting Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Summary judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, supra at 422; Community Nat’l Bank v. Dawes, supra at 553; Mass.R.Civ.P. 56(c). The moving party bears the burden under rule 56(c) to show by credible evidence, through reference to the materials specified in rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Smith v. Massimiano, 414 Mass. 81, 85-86 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Where the moving party would not have the burden of proof at trial, the moving party may meet its burden under rule 56(c) either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Fleshner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party satisfies the burden imposed by rule 56(c), the party opposing the motion may not rest on his pleadings or general denials, he must respond and “ ‘set forth specific facts (emphasis added) showing there is a genuine, triable issue. [Mass.R.Civ.P.] 56(e).” Smith v. Massimiano, supra at 86, quoting Community Nat'l Bank v. Dawes, supra at 554; Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
*42 A. Upton’s Claim in Count I that JWP’s Termination of Upton’s At-Will Employment Violated Public Policy.
In this case, the court confronts an increasingly common phenomenon in our modern society — an employer’s extremely burdensome demands on an at-will employee necessitated by legitimate business concerns and a potential or actual conflict with the employee’s responsibilities as a single parent. The primary issue which the court must address is whether a public policy exception to the general at-will employment rule should be recognized in Massachusetts for a single parent whose parental responsibilities conflict and interfere with the employee’s performance of employer-mandated job requirements. The question of whether a public policy violation has occurred is one which must be answered by the court, and not a jury. Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 151 (1989), citing Mello v. Stop & Shop Cos., 402 Mass. 555, 561 n.7 (1988). The “proper role of the courts [is] to construe the boundaries of ‘public policy’ and thereby develop the common law remedies available to at-will employees who are terminated. (Citations omitted.)” Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 478 (1992) (Liacos, C.J. dissenting).
At the time Upton was hired, she expressly acknowledged in writing that she was an at-will employee of JWP. ‘The general rule [is] that ‘[ejmployment at[-]will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Wright v. Shriners Hosp. for Crippled Children, supra 472, quoting Jackson v. Action for Boston Community Dev., 403 Mass. 8, 9 (1988). Further, “[a]s an employee at[-]will [Upton’s] employment was subject to termination or modification at any time for [almost] any reason or no reason at all.” See Kolodziej v. Smith, 412 Mass. 215, 221-22 (1992), citing Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 150. However, “[i]t is well-established that ‘an at-will employee has a cause of action for wrongful discharge if the discharge is contrary to public policy.’ ” Wright v. Shriners Hosp. for Crippled Children, supra at 477, quoting DeRose v. Putnam Management Co., 398 Mass. 205, 210 (1986). Stated somewhat differently, our Supreme Judicial Court (SJC) has “recognized exceptions” to the general at-will employment rule “when employment is terminated contrary to well-defined public policy," as a part of this Commonwealth’s ever evolving common law. Wright v. Shriners Hosp. for Crippled Children, supra at 472.
While perhaps “the Achilles heel of the [public policy exception] lies in the definition of public policy,” see id. at 478 (Liacos, C.J. dissenting), quoting Palmateer v. International Harvester Co., 85 Ill.2d 124, 130 (1981), the SJC has specified three areas where a public policy exception to the at-will employment rule is appropriate: “[W]here employees are . . . [terminated] for doing what the law requires (citation omitted), for performing important public deeds such as cooperating with law enforcement officials (citation omitted), and for refusing to commit unlawful acts (citation omitted).” Wright v. Shriners Hosp. for Crippled Children, supra at 472, quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 149-50. See also Wright v. Shriners Hosp. for Crippled Children, supra at 477 (Liacos, C.J. dissenting); Kolodziej v. Smith, 412 Mass. 215, 222 (1992).[1] Upton posits that the extremely burdensome working hours mandated by JWP essentially would have required Upton to neglect her son in violation of well-defined public policies in this Commonwealth. In a veiy general sense, the “neglect” of a child by a parent, whether single or not, feasibly could fall within each of the three recognized areas of public policy exceptions to the general at-will employment rule.
However, not surprisingly, competing interests must be considered in determining the boundaries of the public policy exceptions to the general at-will employment rule: “Employees have an interest in knowing they will not be discharged for exercising their legal rights. Employers have an interest in knowing they can run their businesses as they see fit as long as their conduct is consistent with public policy. The public has an interest in employment stability...” Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 149, quoting Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 71 (1980). Our evolving common law clearly does not evince a broad abandonment of the at-will employment rule. The SJC has rejected attempts to convert the general rule “into a rule that requires cause to terminate an at-will employee." Wright v. Shriners Hosp. for Crippled Children, supra at 475. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 151, citing Mello v. Stop & Shop Cos., supra at 560-61; Kolodziej v. Smith, supra at 219-22. As the SJC said in Smith-Pfef-fer, “[t]he public policy exception to the at-will employment rule is not that broad.” Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 150. Therefore, unless Upton’s termination violated a narrow, well-defined, public policy, she has no claim for wrongful discharge.
Upton contends that this Commonwealth has well-defined public policiés regarding the protection of the family unit and the best interests of children. See G.L. 28A, §1 (stating the Commonwealth’s policy regarding state services for assisting families and children); Commonwealth v. Oakes, 407 Mass. 92, 97 (1990) (“Moreover, it is evident beyond the need for elaboration that a State’s interest in safeguarding the physical and psychological well-being of a child is compelling”); Petition of the Dept. of Public Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 587 (1981) (“The rights to conceive and raise one’s children are essential ... basic civil rights ... far more precious ... than *43 property rights . . . The interests of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected . . . [T]he first and paramount duty of courts is to consult the welfare of the child. To that governing principle every other public and private consideration must yield.”); Commonwealth v. Brasher, 359 Mass. 550, 557 (1971) (“[T]he State . . . has an interest in insuring the existence of harmonious relations between family members and between the family unit and the rest of the public society.”).[2] From these well-defined — but broad — public policies, Upton contends that a public policy exception to the general at-will employment rule should be recognized in this Commonwealth when an employer’s mandated job requirements conflict with an at-will employee’s parental responsibilities. Upton is unable, however, to point to any court in this Commonwealth or any other U.S. jurisdiction which has recognized so broad a public policy exception to the general at-will employment rule. This court also has been unable to locate any case which has adopted such a broad public policy exception.
Upton does point to cases in this Commonwealth in the area of unemployment compensation which have recognized that “good cause” under G.L.c. 151A, §25(c), for purposes of being entitled to unemployment compensation, may be satisfied where employees refuse to accept work or terminate their employment as a result of family and child-rearing responsibilities. See Conlon v. Director of the Div. of Employment Security, 382 Mass. 19, 22 (1980) (noting that “the refusal to seek or accept work at certain times because of family responsibilities may constitute ‘good cause’ to decline suitable employment and does not necessarily make the employee unavailable for work”). See also Manias v. Division of Employment Security, 388 Mass. 201, 204 (1983) (holding that domestic responsibilities “may constitute urgent and compelling reasons” making a resignation involuntary); Zukoski v. Director of the Div. of Employment Security, 390 Mass. 1009, 1009 (1984) (holding that childcare responsibilities may justify resignation). The unemployment cases relied upon by Upton were concerned with the statutory phrase “good cause” in §25(c), requiring the SJC to employ statutory construction to determine appropriate situations in which an employee could satisfy the employee’s burden to establish entitlement to unemployment compensation, notwithstanding the employee’s refusal to accept employment or his or her termination of employment as a result of family and child-rearing responsibilities. The unemployment cases do not discuss or even impliedly suggest that their holdings stand for the proposition that an employer could not terminate an at-will employee on the basis of a conflict between job duties and an employee’s parental responsibilities.
What the unemployment cases expressly hold is that employees whose ability to work is impeded by their responsibilities on the home front may be entitled to unemployment compensation, but not in all cases. See Conlon v. Director of the Div. of Employment Sec., supra at 25 (rioting that if employees so limit their availability so'as to effectively remove themselves from the workforce, then benefits must be denied even if there is a valid personal reason for such limitation). In this court’s view, the unemployment cases suggest the proper balance which should be struck between the competing interests of the Commonwealth’s public policies in the areas of family and child-rearing and the employee’s parental responsibilities versus the employer’s mandated requirements in the at-will employment situation. The unemployment cases recognize that the Commonwealth and the employee have substantial interests in protecting an employee’s responsibilities on the home front, while also recognizing that an employer has valid interests in running its business in an appropriate manner. When those interests conflict, a balance must be struck between the three interests. If the balance tips in favor of the Commonwealth’s and employee’s interests, then the Commonwealth’s public policies are fostered and preserved by ensuring the employee receives unemployment compensation.
Establishing a broad public policy exception to the at-will employment rule for single parents whose parental responsibilities conflict and interfere with their employer-mandated job requirements would undermine the delicate balancing of the competing interests which must be performed in the at-will employment situation. The public policy exception which Upton advocates would raise an at-will employee’s interests in parental responsibilities completely above the employer’s legitimate business interests, and prohibit an employer from terminating such an employee whenever there is a conflict between the parental responsibilities and the employer’s requirements. This court finds that such a broad public policy exception to the general at-will employment rule is not warranted simply because such conflict has become more prevalent in modem society.
The Commonwealth and the business community provide remedies for conflicts between the competing interests, including the availability of unemployment compensation in appropriate circumstances, cf. Gram v. Liberty Mut. Ins. Co., supra at 671 (availability of unemployment compensation remedy mitigates against adoption of a duplicative common law remedy by fashioning a requirement that good cause is needed to terminate an at-will employee), and the ability of the employee to seek and locate employment more suitable to meeting the employee’s parental responsibilities. In this court’s view, fashioning a common law cause of action for wrongful discharge by providing the broad public policy exception which Upton advocates in order to provide an additional remedy would not strike the proper balance between the competing in *44 terests in the at-will employment situation. Accordingly, JWP is entitled to summary judgment on Count I of Upton’s complaint which alleges a wrongful discharge of her at-will employment in violation of public policy.
B. Upton’s Claims for Breach of Contract and Estoppel.
Based on the statements by JWP’s employees during the pre-employment interviews that Upton would only have to work from 8:30AM to 5:30PM, often with either working through lunch or missing lunch entirely, and working late attending meetings a couple of nights per month, Upton contends that those hours constituted a condition of her at-will employment contract. Thus, according to Upton, when JWP changed those hours without Upton’s consent then JWP committed a breach of the employment contract. Upton’s contention, though, is undermined by the broad parameters of the general at-will employment rule.
As previously noted, an at-will employee’s “employment [is] subject to . . . modification at any time for [almost] any reason or no reason at all.” See Kolodziej v. Smith, 412 Mass. 215, 221-22 (1992), citing Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 150. The employer does not need the employee’s consent to change the terms of the employee’s employment. Provided that the change in the terms of employment does not violate public policy, the employer commits no actionable breach of the at-will employment contract simply by changing the terms of employment. Accordingly, JWP is entitled to summary judgment on Count II of Upton’s complaint which alleges a claim for breach of the employment contract.
Turning to Upton’s estoppel claim, the claim in essence seeks to circumvent the general at-will employment rule permitting the employer to change the terms of the employment at any time without the employee’s consent, provided such change does not violate public policy. Upton would have this court find that she “detrimentally relied” on the statements by JWP’s employees concerning the working hours in accepting employment with JWP, which presumably she would not have done if she had known otherwise.
Upton specifically accepted employment as an at-will employee, subjecting the terms of her employment to change at any time at the employer’s discretion within the bounds of the general at-will employment rule. The court can discern no inequity in JWP doing what it was permitted to do within the bounds of the general at-will employment rule. The court also can discern no reason to hold that Upton’s reliance on the statements by JWP’s employees constituted any detriment to Upton. Accordingly, JWP is entitled to summary judgment on Count III of Upton’s complaint which alleges a claim for estoppel based on detrimental reliance.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant JWP Businessland’s motion for summary judgment is hereby ALLOWED, and further, that judgment shall ENTER for defendant JWP Business-land dismissing Counts I, II, and III of plaintiff Joanna Upton’s complaint.

Plaintiff does not raise a claim that she was terminated in order to “avoid paying her expected future compensation or expected benefits," another area where an exception to the general at-will employment rule has been recognized in Massachusetts. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., supra at 150 n.4, citing Gram v. Liberty Mut Ins. Co., 384 Mass. 659 (1981), Fortune v. National Cash Register Co., 373 Mass. 96 (1977).

 While G.L.c. 151B, §3(6), provides protection for an employee discriminated against in the area of employment as a result of the employee’s children, c. 15 IB did not include such protection until some three months after Upton was terminated from her employment with JWP.