RUTH V. KOLODZIEJ vs. WARREN SMITH
& another.[1]

Hampden. October 9, 1991. - March 16, 1992.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Directed verdict. *Civil Rights,* Availability of remedy, Termination of employment. *Constitutional Law,* Freedom of religion. *Employment,* Termination, Discrimination. *Contract,* Employment. *Public Policy.*

Evidence that an employer required all of its management level employees to attend a week-long seminar that, while nondenominational, used references to Scriptural texts to reinforce and illustrate teachings in the resolution of conflicts in interpersonal relationships was insufficient as a matter of law to warrant recovery under G. L. c. 12. § 11I, on a management employee's claim that the employer interfered with her rights of religious freedom under the First Amendment to the United States Constitution and art. 2 of the Declaration of Rights of the Massachusetts Constitution. [219-221]

A judge in a civil action correctly allowed an employer's motion for a directed verdict on a claim by a management employee that week-long seminar for all management level employees was an unlawful discriminatory practice in violation of G. L. c. 151B, § 4 (1A), where the employee provided no evidence that the employer's condition for her continuing in her management-level position, attendance at the seminar, required her to miss any religious service or to compromise her faith. [221]

There was no merit to an employee's claim that she was entitled to damages because her employer terminated her at-will employment in violation of public policy, that is, she was fired because she refused to attend a "religion seminar," where there was no evidence that attending the seminar inhibited her in the exercise of her religion, or that her employer fired her because of her religion. [221-222]

In the circumstances, this court remanded a case to the trial judge solely to give the plaintiff an opportunity to file a motion in the Superior Court to amend her complaint to assert a claim under Title VII of the

---

[1]Electro-Term, Inc.

Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (1988). [222-223]


CIVIL ACTION commenced in the Superior Court Department on August 17, 1988.

The case was tried before *James P. Lynch, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Raymond R. Randall* (*Deborah D. A. Jeffrey* with him) for the plaintiff.

*Douglas R. Dagarin* for the defendants.

*Steven J. Schwartz*, for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

*Robert G. Caprera*, for Institute in Basic Life Principles, amicus curiae, submitted a brief.

O'CONNOR, J. At all relevant times, the defendant Warren Smith was the president and sole shareholder of the corporate defendant Electro-Term, Inc. The plaintiff asserts in her complaint that the defendants interfered with her rights of religious freedom guaranteed by the Federal and State Constitutions, entitling her to damages and other relief under G. L. c. 12, § 11I (1990 ed.). She seeks similar relief on the ground that the defendants made her retention of employment conditional on her forgoing the practice of her "creed or religion as required by that creed or religion" in violation of G. L. c. 151B, § 4 (1A) (1990 ed.). Finally, the plaintiff's complaint alleges that she is entitled to damages because Electro-Term, Inc., terminated her at-will employment in violation of public policy, that is, Electro-Term, Inc., fired or demoted her because she refused to attend a religion seminar. Other claims set forth in the complaint are not in issue in this appeal.

The case was tried to a jury. At the close of the plaintiff's evidence, the defendants moved for directed verdicts. Recognizing "the wisdom, normally, of submitting cases to juries for their decision rather than directing verdicts at the close of the plaintiff's evidence or of all the evidence, as recom-

mended by *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974 (1976) and its several progeny," the judge nevertheless "was of the strong belief that the plaintiff clearly had failed to make out a case which warranted submission to the jury," and therefore he allowed the motion for directed verdicts in its entirety. The plaintiff appealed to the Appeals Court and we transferred the case here on our own motion. We affirm the judgment entered in the Superior Court.

In reviewing a directed verdict, we summarize the evidence in the light most favorable to the party having the burden of proof, who ordinarily, as here, is the plaintiff. *Narine* v. *Powers*, 400 Mass. 343, 344-345 (1987). The jury would have been warranted in finding the following facts. Electro-Term, Inc., manufactures and sells electrical connectors. Begun in 1976 by the defendant Smith, the company considers itself a "Christian company." It espouses Christian principles and offers a weekly Bible reading session to employees at which attendance is voluntary. In 1988, when the plaintiff's legal action was commenced, Electro-Term, Inc., employed approximately forty-one people. The plaintiff, a Roman Catholic, was initially hired as a temporary employee by the company in August, 1987. In October, 1987, she was hired permanently and promoted to the position of controller, a management position. At all times she was an employee at will.

Smith considered it very beneficial for the company's employees annually to attend a week-long seminar put on by the Institute in Basic Life Principles entitled "Institute in Basic Youth Conflicts." Attendance was mandatory for management level employees. The seminar offered instruction in several areas including the resolution of conflicts in interpersonal relationships, dealing with anger, and responding to authority. The seminar was nondenominational, but it used references to Scriptural texts to reinforce and illustrate its teachings. On the first night, the 1988 seminar, which was held in Symphony Hall in Springfield, focused on the family and its relationship to "the church." A workbook was distributed that referred to Biblical passages. The workbook was

prefaced with an extensive list of passages, separated by topic headings, which those in attendance were encouraged to read at home. A representative sampling of topic headings is as follows: "Wisdom and Understanding," "Discerning Levels of Conflict," "Responding to Enemies," "Basic Steps of Maturity," "Acceptance of God's Design," "Abnormal Social Developments," "Discerning God's Guidance," "Basic Structures of Authority — Family, Government, Church," "Reverence," "Gratefulness," "Forgiveness," "Basic Steps to Walk in God's Spirit," "Consequences of Sensual Material," and "Consequences of Alcohol."

On the second night of the 1988 seminar, a videotape presentation centered on a woman's proper place in the family. The plaintiff testified, "This whole thing was done by video cassette, a screen up on the auditorium stage. There was no person giving the seminar. You watched the video on a screen, and there was this great big triangle and there was a man up at the top and the wife underneath him and the family underneath that, and I kind of looked at that situation where the woman was — I was told the woman was under the man's influence in the family, that she should follow everything that he says, that she should not concern herself with financial matters in the family; that was his area, that she made the home a pleasant place to be; that she made the home, that he financed the home, in essence." Scriptural passages were offered in support of this concept and the workbook contained a diagram showing a man in a superior position to the woman in the family. The plaintiff further testified: "They were telling me that I was a second class citizen — my husband's first class, I'm second class — and yet they are using the Bible to tell me that this is true, which I didn't believe was true, they are telling me that I shouldn't know anything about financial matters, and here I am supposedly the controller of Electro-Term and the president is supposed to be digesting what I tell him. It just — the whole thing bothered me terribly."

On Wednesday, the plaintiff told Smith that she would not attend the rest of the seminar. On the following day, she ex-

plained to Smith that it was personally offensive, "religious," and not work-related. He told her that, if she did not attend the seminar, she could no longer be part of management. He offered her a position as bookkeeper. The plaintiff refused either to attend the seminar or to accept what she considered to be a demotion to the nonmanagement position of bookkeeper. The plaintiff left the company's employ. For our purposes it makes no difference whether we consider the plaintiff as having been demoted or discharged for her refusal to attend the seminar. In either event, she was penalized.

The Massachusetts Civil Rights Act, G. L. c. 12, § 11H (1990 ed.), authorizes the Attorney General to bring a civil action in the Superior Court "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth . . . ." Section 11I grants a private cause of action to any individual whose exercise or enjoyment of such rights has been interfered with, or attempted to be interfered with, as described in § 11H. *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 821 (1985). The plaintiff contends that the defendants interfered with her rights of religious freedom under the First Amendment to the United States Constitution and under art. 2 of the Declaration of Rights of the Massachusetts Constitution.

The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." Article 2 provides in relevant part, "[N]o subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience, or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship." General Laws c. 12, §§ 11H and 11I, provide remedies for interference with civil rights either

by the State or by private individuals. *O'Connell* v. *Chasdi*, 400 Mass. 686, 692 (1987). *Bell* v. *Mazza*, 394 Mass. 176, 181-182 (1985). *Batchelder* v. *Allied Stores Corp.*, *supra* at 821, 822-823. The question we must answer is whether the evidence set forth above is sufficient to warrant a finding that either defendant or both defendants interfered with the plaintiff's Federal or State constitutional right to believe and profess the religious doctrine of her choice. This right includes the right to assemble, or abstain from assembling, with others to engage in religious activity, *Employment Div., Dep't of Human Resources of Or.* v. *Smith*, 494 U.S. 872, 877-878 (1990), and it includes the right to refrain from professing a particular religious belief. *Torcaso* v. *Watkins*, 367 U.S. 488, 495 (1961). "Only beliefs rooted in religion are protected . . . ." *Frazee* v. *Illinois Dep't of Employment Sec.*, 489 U.S. 829, 833 (1989), quoting *Thomas* v. *Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 713 (1981). "Purely secular views do not suffice." *Frazee, supra.* However, in order for a belief to be a protected religious belief, it is not necessary that it be shared by an organized sect or church. *Id.*

The plaintiff argues that the principle taught at the seminar, that Scripture says that husbands have authority superior to that of their wives within the family context, is a belief rooted in religion, as is her contrary belief. Frequently, as here, making a proper distinction between religious and secular beliefs is difficult. Nevertheless, we accept the plaintiff's contention that these two contrary beliefs are religious beliefs. It follows that the plaintiff would have had a right to abstain from attendance at the seminar if, as a result of the advocacy of that belief, the seminar constituted a religious activity. We hold, however, that it did not.

We have no doubt that an employer's requirement of an employee's attendance at devotional services at which prayer is offered would constitute unlawful compulsion to participate in religious activity. This would be true regardless of whether the employee was told she could ignore what was going on. *Young* v. *Southwestern Sav. & Loan Ass'n*, 509

F.2d 140 (5th Cir. 1975), and *EEOC* v. *Townley Eng'g &
Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988), cited by the plaintiff, stand for that proposition. However, the seminar at issue
here was in no sense a devotional service despite the fact that
it promoted Scriptural passages as support for the lessons it
sought to promote. No case has come to our attention in
which a court has held on facts comparable to the facts here
that an employer has interfered with an employee's religious
freedom, and we are not willing to go that far. Surely, there
is no evidence ·in this case that would warrant a finding that
the defendants have forced the plaintiff to alter her religious
convictions or her profession of belief, or to give the appearance of supporting a particular tenet of religion. We conclude that the evidence was insufficient as a matter of law to
warrant recovery under G. L. c. 12, § 11I, and that the judge
correctly directed verdicts for the defendants on those claims.

Next, the plaintiff argues that compulsory attendance at
the seminar violated G. L. c. 151B, § 4 (1A), which makes it
an "unlawful discriminatory practice for an employer to impose upon any individual as a condition of obtaining or retaining employment any terms or conditions, compliance
with which would require such individual to violate, or forego
the practice of, his creed or religion as required by that creed
or religion . . . . The employee shall have the burden of proof
as to the required practice of his creed or religion." In *Lewis*
v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass.
761, 771 (1986), we observed that this "statute does not deal
with the full panoply of religious beliefs, practices, preferences, and ideals," but focuses instead on *required* religious
*practices*. The plaintiff produced no evidence that the defendants' condition for her continuing as controller, attendance at the seminar, required her to miss any religious service or to compromise her faith. There was no evidence that
Roman Catholic dogma forbade her attendance at the seminar. The judge correctly allowed the motion for directed verdicts on the G. L. c. 151B, § 4 (1A), claim.

We turn to the plaintiff's claim that she was discharged or
demoted in violation of public policy. As an employee at will

the plaintiff's employment was subject to termination or modification at any time for any reason or no reason at all. *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 150 (1989). We have allowed exceptions to this general at-will employment rule in cases where employees have been discharged for doing what the law requires, see *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 416 (1988), for performing important public deeds such as cooperating with law enforcement officials, see *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 811 (1991), and for refusing to commit unlawful acts, see *De-Rose* v. *Putnam Management Co.*, 398 Mass. 205, 209-210 (1986). Of course, it is a public policy of this State to allow free exercise of religion. The plaintiff's claim fails, however, because there was no evidence that attending the seminar inhibited her in the exercise of her religion, or that Electro-Term, Inc., fired her because of her religion. A verdict for Electro-Term, Inc., was properly directed.

It appears that before commencing this action the plaintiff had filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) and MCAD then filed that complaint with the Equal Employment Opportunity Commission as required for a plaintiff to bring a Title VII (Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. [1988]) action. See *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, *supra* at 770 n.11, citing 2 A. Larson, Employment Discrimination § 48.31 (1985). Beyond the averment in her Superior Court complaint that she had filed a complaint with MCAD, the plaintiff's complaint did not set forth a specific count asserting a violation of Title VII. Apparently, this was because counsel believed that Title VII actions were required to be brought in a Federal court. See *Bradshaw* v. *General Motors Corp.*, 805 F.2d 110, 112 (3d Cir. 1986); *Jones* v. *Intermountain Power Project*, 794 F.2d 546, 553 (10th Cir. 1986); *Valenzuela* v. *Kraft, Inc.*, 739 F.2d 434, 436 (9th Cir. 1984). Subsequent to the bringing of this action, approximately one month before the trial, the United States Supreme Court held that State courts have ju-

risdiction to adjudicate Title VII claims. *Yellow Freight Sys., Inc.* v. *Donnelly*, 494 U.S. 820, 825 (1990). We think that the plaintiff should have an opportunity to file a motion in the Superior Court to amend her complaint to assert a Title VII claim.

We affirm the judgments entered below except that we remand this case solely to give the plaintiff an opportunity within thirty days of the issuance of the rescript of this court to move to amend her complaint as discussed above.

*So ordered.*