KATHLEEN PIELECH & another[1] *vs.* MASSASOIT GREYHOUND, INC.[2]

Bristol. November 7, 1995. - August 20, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Statute,* Construction. *Employment,* Discrimination. *Anti-Discrimination Law,* Employment. *Constitutional Law,* Freedom of religion. *Jurisdiction,* Ecclesiastical controversy.

This court concluded that G. L. c. 151B, § 4 (1A), prohibiting employment discrimination based on religion, violates the establishment clause of the First Amendment to the United States Constitution by preferring organized religious belief over other sincerely held beliefs, by promoting excessive government entanglement with religion, and by effectively compelling the courts to ascertain the requirements of the religion at issue. [538-542] ABRAMS, J., dissenting, with whom LIACOS, C.J., & GREANEY, J., joined.

CIVIL ACTION commenced in the Superior Court Department on June 15, 1993.

The case was heard by *John J. O'Brien,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Howard A. Brick* for the Anti-Defamation League.

*Joel A. Kozol (William I. Cowin* with him) for the defendant.

*Harvey A. Schwartz,* for Kathleen Pielech & another, submitted a brief.

---

[1]Patricia Reed.

[2]We acknowledge the filing of amicus briefs by the Attorney General, the Roman Catholic Archbishop of Boston together with the Roman Catholic Bishops of Fall River and Worcester and the administrator of the Roman Catholic Diocese of Springfield, Catholic League for Religious and Civil Rights, the Anti-Defamation League, and Civil Liberties Union of Massachusetts.

The following submitted briefs for amici curiae:

*Nancy J. Gannon,* of Wisconsin, for the Catholic League For Religious and Civil Rights.

*Howard A. Brick, Sally J. Greenberg & Carl E. Axelrod, & Ruth L. Lanser, Steven Freeman & Debbie N. Kaminer* of New York, for the Anti-Defamation League.

*Scott Harshbarger,* Attorney General & *Freda K. Fishman,* Assistant Attorney General, for the Attorney General.

*Toni G. Wolfman, Michael A. Albert, & Sarah R. Wunsch* for Civil Liberties Union of Massachusetts.

*Wilson D. Rogers, Jr., Frederic J. Torphy, James F. Cosgrove, & John J. Egan,* for the Roman Catholic Archbishop of Boston & others.

O'CONNOR, J. The plaintiffs, former at-will employees of the defendant corporation, seek damages based on their assertion that the defendant required them, as a condition of their continued employment, to work on Christmas Day in contravention of their "creed or religion as required by that creed or religion" in violation of G. L. c. 151B, § 4 (1A) (1994 ed.). The plaintiffs also claim entitlement to relief under G. L. c. 93, § 102 (1994 ed.) (Massachusetts Equal Rights Act). The plaintiffs moved for summary judgment and the defendant filed a cross motion for summary judgment as to liability. A Superior Court judge allowed the defendant's motion and denied that of the plaintiffs. The plaintiffs appealed, and we granted their application for direct appellate review. We affirm the judgment for the defendant, although our reasoning differs from that of the Superior Court judge.

The following undisputed facts are established by the summary judgment materials: The plaintiffs were employed by the defendant as part-time parimutuel clerks at the Raynham-Taunton Greyhound Track. On December 18, 1992, the defendant posted a notice informing all regularly scheduled employees that they would be required to work on Christmas night, Friday, December 25, 1992. The plaintiffs were regularly scheduled to work on Fridays, but requested Christmas off to observe the holiday. The defendant denied their requests. The plaintiffs failed to appear for work on December 25. The parties differ as to whether they were "terminated" or "suspended." In any event, they suffered "adverse action" for purposes of c. 151B, § 4 (1A).

In addition, the plaintiffs submitted affidavits that at the relevant time they were devout members of the Roman Catholic Church and that, as such, their religious beliefs prohibited them from working on Christmas. The question whether abstinence from work on Christmas was required by Roman Catholic dogma was also the subject of affidavits given by two Roman Catholic priests, one of which was submitted by the plaintiffs and the other of which was submitted by the defendant. The affidavit submitted by the defendant essentially stated that Roman Catholics are obligated to attend one mass celebrated between 4 P.M. on December 24 and 1 P.M. on December 25, and that the church neither prohibits its members from working on Christmas nor requires them to worship on Christmas night. The priest's affidavit submitted by the plaintiffs said that "[o]n Sundays and other holy days of obligation the faithful are . . . to abstain from those labors and business concerns which impede the worship to be rendered to God, the joy which is proper to the Lord's Day, or the proper relaxation of mind and body." That affidavit also cited the following statement from The Catholic Encyclopedia as authoritative:

> "Church law forbids servile work on Sundays and holy days of obligation, but exceptions are made for those functions that are necessary for the well-being of society, or for those who must support their family or to maintain their livelihood."

"Based on the authorities provided by the parties, [the motion judge] rule[d]" as follows: "Catholic dogma does not *require* worshippers to abstain from working on Holy days. The only requirement the church absolutely imposes upon its followers is to attend mass. Plaintiffs were not denied the opportunity to attend mass, and therefore, plaintiffs cannot establish that they were forced to forgo a practice required by their religion. The fact that plaintiffs wished to further observe the Christmas holiday does not constitute a religious requirement. See *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, [397 Mass. 761, 772 (1986)]. As plaintiffs' claim for violation of G. L. c. 151B, [§] 4 (1A) fails, so too must their claims premised on G. L. c. 93, [§] 102." (Emphasis in original.)

General Laws c. 151B, § 4 (1A), provides in pertinent part the following:

"It shall be unlawful discriminatory practice for an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate, or [forgo] the practice of, his creed or religion as required by that creed or religion including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day and the employer shall make reasonable accommodation to the religious needs of such individual. . . . The employee shall have the burden of proof as to the required practice of his creed or religion."

This court construed G. L. c. 151B, § 4 (1A), in *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 771 (1986). We held, "The statute does not deal with the full panoply of religious beliefs, practices, preferences, and ideals. . . . The application of the statute is much more narrow. It prohibits an employer from requiring an employee, as a condition of employment, to violate or forgo the *practice* of her religion as *required* by that religion. It follows that the threshold showing an employee must make is whether the activity sought to be protected is a religious practice and is required by the religion." (Emphasis in original.) *Id.* at 771-772. Later, in *Kolodziej* v. *Smith*, 412 Mass. 215 (1992), in which the plaintiff sought damages and other relief "on the ground that the defendants made her retention of employment conditional on her forgoing the practice of her 'creed or religion as required by that creed or religion' in violation of G. L. c. 151B, § 4 (1A)," *id.* at 216, we held that the judge in the Superior Court had correctly directed verdicts for the defendants on that claim. We reasoned as follows:

"In *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 771 (1986), we observed that this 'statute does not deal with the full panoply of religious beliefs, practices, preferences, and ideals,' but focuses instead on *required* religious *practices*. The plaintiff produced no evidence that the defendants' condition for her continuing as controller, attendance at the seminar, required her to miss any religious service or to compromise her faith. There was no evidence that Roman Catholic dogma forbade her attendance at the seminar." (Emphasis in original.) *Id.* at 221.

The plaintiffs' brief in the present case states that "[t]his appeal presents a direct challenge to this Court's recent interpretations of c. 151B, § 4 (1A), which hold that the only religious beliefs protected by the employment discrimination statute are those that are required by the dogma of an established religion. This interpretation of the statute denies protection to employees whose sincere religious beliefs differ from the established dogma of their religion or are not accepted as dogma by any religion. Such an interpretation violates the Establishment Clause of the First Amendment to the United States Constitution and Article 2 of the Declaration of Rights." The plaintiffs' contention that, in *Lewis* v. *Area II Homecare for Senior Citizens, Inc., supra,* and *Kolodziej* v. *Smith, supra,* this court misconstrued c. 151B, § 4 (1A), is based entirely on their argument that, so construed, the statute is unconstitutional. The plaintiffs then conclude as follows:

> "To salvage the constitutionality of the statute it must be applied broadly to protect holders of all religious beliefs, not just those who follow the dogma of an established religion. Applied in that manner, since the plaintiffs have proven that the dictates of their own consciences and their religious beliefs founded on those dictates prohibited them from working on what to them was the most holy day of the year, and since their employer fired them for refusing to violate their religious beliefs, they were entitled to summary judgment as to liability."

No question concerning the constitutionality of c. 151B, § 4 (1A), was raised in *Lewis* or *Kolodziej.* That question is presented to this court for the first time in this case. As we shall explain later in this opinion, we agree that G. L. c. 151B, § 4(1A), as construed by this court in those cases, and as we construe it in this case, is unconstitutional. We do not agree with the plaintiffs, however, that the appropriate remedy is for us to interpret the statute as "protect[ing] holders of all religious beliefs, not just those who follow the dogma of an established religion." Instead, we conclude that the plaintiffs' reliance on that statute, unconstitutional as it is, is unwarranted.

"[S]tatutes are to be construed so as to avoid an unconsti-

tutional result or the likelihood thereof," *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763-764 (1985), but only "if reasonable principles of interpretation permit it." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 79 (1982). "We must construe the statutes as they are written." *Brennan* v. *Election Comm'rs of Boston*, 310 Mass. 784, 789 (1942). "The scope of the authority of this court to interpret and apply statutes is limited by its constitutional role as a judicial, rather than a legislative, body. See art. 30 of the Massachusetts Declaration of Rights. In construing a legislative enactment, it is our duty to ascertain and implement the intent of the Legislature. . . . We cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction. *Milton* v. *Metropolitan Dist. Comm'n*, 342 Mass. 222, 227 (1961)." *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 780-781 (1977). "As Justice Qua stated in *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 548 (1945), this court is under a duty 'to avoid judicial legislation in the guise of new constructions to meet real or supposed new popular viewpoints, preserving always to the Legislature alone its proper prerogative of adjusting the statutes to changed conditions.' " *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 595 (1975). "Statutory language is the principal source of insight into [l]egislative purpose. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977)." *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984).

General Laws c. 151B, § 4 (1A), declares unlawful an employer's imposition on an employee of "terms or conditions, compliance with which would require such individual to violate, or [forgo] the practice of, his creed or religion *as required by that creed or religion*" (emphasis added). In order to construe 151B, § 4 (1A), as protecting "holders of all religious beliefs, not just those who follow the dogma of an established religion," as urged by the plaintiffs, we would be required to ignore, that is, treat as surplusage, the words "as required by that creed or religion." It is unlikely that the Legislature intended such a result. See *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946) ("None of the words of a statute is to be regarded as superfluous . . ."). The effect of the quoted statutory language is to limit the application of the statute to persons whose practices and beliefs mirror those required by the dogma of established

religions. To construe the statute as not containing such limitation "would be to engage in a judicial enlargement of the clear statutory language beyond the limit of our judicial function. We have traditionally and consistently declined to trespass on legislative territory in deference to the time tested wisdom of the separation of powers as expressed in art. xxx of the Declaration of Rights of the Constitution of Massachusetts even when it appeared that a highly desirable and just result might thus be achieved. *King* v. *Viscoloid Co.*, 219 Mass. 420, 424-425 [1914]. *Simon* v. *Schwachman*, 301 Mass. 573, 581-582 [1938]. We will not do so now." *Dalli* v. *Board of Educ.*, 358 Mass. 753, 759 (1971) (declining to construe language in vaccination statute exempting persons subscribing to "the tenets and practice of a recognized church or religious denomination" to include others whose sincerely held religious beliefs nevertheless conflict with vaccination).

We come now to our discussion of the constitutionality of G. L. c. 151B, § 4 (1A). The First Amendment to the United States Constitution, which applies to the States through the Fourteenth Amendment, *Everson* v. *Board of Educ. of Ewing*, 330 U.S. 1, 15-16 (1947); *Cantwell* v. *Connecticut*, 310 U.S. 296, 303 (1940), provides in pertinent part that "Congress shall make no law respecting an establishment of religion."

A statute that prefers one or more religions over another violates the establishment clause. *School Dist. of Grand Rapids* v. *Ball*, 473 U.S. 373, 381 (1985). *Estate of Thornton* v. *Caldor, Inc.*, 472 U.S. 703, 710 (1985). *Larson* v. *Valente*, 456 U.S. 228, 245 (1982). Also, "in order for a belief to be a protected religious belief, it is not necessary that it be shared by an organized sect or church." *Kolodziej* v. *Smith, supra* at 220. "If [religious] beliefs be sincerely held they are entitled to the same protection as those more widely held by others." *Dalli* v. *Board of Educ., supra* at 758. Thus, G. L. c. 151B, § 4 (1A), which distinguishes between (1) an individual's sincerely held religious belief that is shared with others belonging to an organized church or sect and (2) a belief that is not similarly shared, violates the establishment clause.

General Laws c. 151B, § 4 (1A), also offends the establishment clause by promoting excessive governmental entanglement with religion. Courts avoid such entanglement by abstaining from the resolution of controversies regarding religious matters. *Serbian E. Orthodox Diocese* v. *Milivojevich,*

426 U.S. 696, 718 (1976). *Presbyterian Church* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 450 (1969). See *Redmond* v. *GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978) (stating, in interpreting Title VII provisions prohibiting employment discrimination based on religion, that "to restrict the act to [protecting only] those practices which are mandated or prohibited by a tenet of the [plaintiff's] religion . . . would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion. We find such a judicial determination to be irreconcilable with the warning issued by the Supreme Court in *Fowler* v. *Rhode Island*, [345 U.S. 67, 70 (1953),] '[I]t is no business of courts to say . . . what is a religious practice or activity . . .' "). This doctrine is directly related to the establishment clause's essential purpose, which is to assure that government maintains "a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Walz* v. *Tax Comm'n of the City of N.Y.*, 397 U.S. 664, 669 (1970). See *Alberts* v. *Devine*, 395 Mass. 59, 72, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985) ("First Amendment prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization"); *Wheeler* v. *Roman Catholic Archdiocese*, 378 Mass. 58, 63-64, cert. denied, 444 U.S. 899 (1979) (dismissing complaint seeking imposition of trust on church property because statements in earlier cases "suggesting generally that the courts should be less reluctant to intervene in cases [touching religious matters] involving property rights or personal rights were written before the teachings of more recent relevant Supreme Court opinions, particularly *Serbian E. Orthodox Diocese*, were available," and because "sound policy dictates that the denominations, and not the courts, interpret their own body of church polity"), cert. denied, 444 U.S. 899 (1979); *United Kosher Butchers Ass'n* v. *Associated Synagogues of Greater Boston, Inc.*, 349 Mass. 595, 598 (1965) (courts will not interfere in a controversy which is exclusively or primarily of an ecclesiastical nature); *Moustakis* v. *Hellenic Orthodox Soc'y*, 261 Mass. 462, 466 (1928) ("It is not the province of civil courts to enter the domain of religious denominations for the purpose of deciding controversies touching matters exclusively ecclesiastical").

General Laws c. 151B, § 4 (1A), effectively compels courts, in cases where the dogma of an established church or religion is disputed, to ascertain the requirements of the religion at issue. This may occur in connection with a trial with or without a jury or, as here, in connection with rulings on motions for summary judgment. We conclude that G. L. c. 151B, § 4 (1A), construed as we have concluded it must be construed, would require our courts in this case to determine what actions and beliefs are required of adherents to the Roman Catholic faith. These are not proper matters for the courts to decide. For this reason, in addition to its preference of religious beliefs and practices that are shared by organized churches over those not so shared, we conclude that § 4 (1A) violates the establishment clause of the First Amendment.[3] The plaintiffs' claims grounded on G. L. c. 151B, § 4 (1A), therefore, must fail.

The plaintiffs rely on G. L. c. 93, § 102, the Massachusetts Equal Rights Act, as well as on G. L. c. 151B, § 4 (1A). In their brief, the plaintiffs do little more than assert in conclusory fashion that the judge in the Superior Court should have analyzed their c. 93, § 102, claim "under the more strict requirements of art. 2 [of the Massachusetts Declaration of Rights]." The plaintiffs' treatment of that issue is insufficient appellate argument. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

*Judgment affirmed.*

ABRAMS, J. (dissenting, with whom Liacos, C.J., and Greaney, J., join). Today the court unnecessarily declares unconstitutional a statute designed to protect the religious beliefs of workers in this Commonwealth. As a result, two women have been denied the chance to show that their sincerely held religious beliefs do not permit them to work on Christmas, and they have lost their jobs. Even more regrettably, workers in this Commonwealth have now lost an important State protection designed to preserve their religious beliefs against the unreasonable demands of employers. This unfortunate

---

[3]We need not consider or discuss the plaintiffs' assertion that c. 151B, § 4 (1A), as we construe it, also violates art. 2 of the Massachusetts Declaration of Rights.

result has been reached, despite the fact that the provision at issue was enacted more than twenty years ago and has been regularly invoked by employees without questions being raised as to its constitutionality. The result clearly does not comport with the legislative objective and is not required by the words of the statute.

The court cites generally correct principles of statutory interpretation, see *ante* at 538-539, but fails to apply them properly and ignores other applicable canons of construction. Rather than accepting a reasonable, constitutional interpretation of the statute, the court relies on a rigid and overly analytic interpretation of its words which disregards a manifest legislative objective to protect sincerely held religious beliefs.[1]

The court is required to "indulge *every* rational presumption in favor of [the statute's constitutionality]" (emphasis added). *Neff* v. *Commissioner of the Dep't of Indus. Accidents,* 421 Mass. 70, 73 (1995), quoting *Commonwealth* v. *Lammi,* 386 Mass. 299, 301 (1982). In 1971, in *Dalli* v. *Board of Educ.,* 358 Mass. 753 (1971), this court held unconstitutional the provisions of G. L. c. 76, § 15, which offered protection only to persons whose religious beliefs were sanctioned by a recognized church or religious denomination. The wording of G. L. c. 151B, § 4 (1A) (1994 ed.), differs from that of G. L. c. 76, § 15, which was held to be unconstitutional in *Dalli.* However, unlike G. L. c. 76, § 15, G. L. c. 151B, § 4 (1A), does not specifically limit its protection to adherents to "the tenets and practice of a recognized church or religious denomination." It instead prohibits an employer from requiring an individual to violate or forgo the practice of his creed or

---

[1]The court's opinions in *Lewis* v. *Area II Homecare for Senior Citizens, Inc.,* 397 Mass. 761 (1986), and *Kolodziej* v. *Smith,* 412 Mass. 215 (1992), have not constitutionally interpreted G. L. c. 151B, § 4 (1A) (1994 ed.). *Ante* at 538. In *Lewis,* the court merely stated that to prevail, an employee must show that the activity sought to be protected (in this case, abstaining from work on Christmas night) is a religious practice and is required by a plaintiff's religion. *Lewis, supra* at 771. The court did not define a plaintiff's religion to mean only those beliefs and practices endorsed by officials of her church. Later, in *Kolodziej,* the court clarified the plaintiff's burden as one of producing evidence that the complained of employment practice caused the employee to miss religious services or compromise her faith. *Kolodziej, supra* at 221. While the court did note that "[t]here was no evidence that Roman Catholic dogma forbade her attendance at the seminar," the court did not require such evidence as proof of the plaintiff's faith and this observation was not essential to the judgment in the case. *Id.*

religion as required by that creed or religion. General Laws c. 151B, § 4 (1A), does not require that the person's creed or religion be "recognized" or even that the religious beliefs be shared with others. No affidavit or testimony of an official of a recognized church is required by the express wording of the statute. In holding unconstitutional a statute which was enacted two years after the *Dalli* decision,[2] the court ignores the general rule of statutory construction that the Legislature is presumed to have had knowledge of the decisions of this court. *MacQuarrie* v. *Balch,* 362 Mass. 151, 152 (1972). See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 854 (1983) (Legislature presumably aware of decisions of this court).

The court should assume that the Legislature in enacting the statute, did not embark on an exercise in futility, but rather intended that the statutory text reflect the teaching of the *Dalli* case and comply with the First Amendment and art. 2 to the Massachusetts Declaration of Rights. The statute should be interpreted, as the Legislature intended, to constrain religious intolerance and to provide broad protection to a person's religious beliefs, as sincerely held by that person, whether officially approved by a recognized church or not.[3] See *Attorney Gen.* v. *Desilets,* 418 Mass. 316, 323 (1994) ("Conduct motivated by sincerely held religious convictions will be recognized as the exercise of religion"); *Dalli, supra* at 758 ("If the beliefs be sincerely held they are entitled to the

---

[2]Subsection 1A was inserted by St. 1973, c. 929 (approved Oct. 17, 1973).

[3]Such a reading of the statute comports with Federal caselaw under the First Amendment to the United States Constitution and § 703 (a)(1) of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e-2 (a)(1) (Title VII). See *Frazee* v. *Illinois Dep't of Employment Sec.,* 489 U.S. 829, 832-833 (1989), holding that *Sherbert* v. *Verner,* 374 U.S. 398 (1963), *Thomas* v. *Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707 (1981), and *Hobbie* v. *Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136 (1987), all rested on the fact that each of the claimants had a sincere belief that his or her religion required him or her to refrain from the work in question not on consideration that each was a member of a particular religious sect or on a tenet of a sect forbidding such work. The Supreme Court, in *Frazee,* explicitly rejected the notion that to claim the protection of the free exercise clause one must be responding to the commands of a particular religious organization. *Frazee, supra* at 834. See also *Trans World Airlines, Inc.* v. *Hardison,* 432 U.S. 63, 73-74 (1977) (noting that 1972 amendments to Title VII defined religion to include all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate without undue hardship).

same protection as those more widely held by others"). This reading of the statute is reasonable, gives meaning to all the words chosen by the Legislature, and conforms with our previous rulings that this court will not involve itself in determining religious dogma. See, e.g., *United Kosher Butchers Ass'n* v. *Associated Synagogues of Greater Boston, Inc.*, 349 Mass. 595, 598 (1965) ("It is settled by our decisions that courts will not interfere in a controversy which is exclusively or primarily of an ecclesiastical nature"); *Moustakis* v. *Hellenic Orthodox Soc'y*, 261 Mass. 462, 466 (1928) ("It is not the province of civil courts to enter the domain of religious denominations for the purpose of deciding controversies touching matters exclusively ecclesiastical"). Contrary to being rendered superfluous by such a reading of the statute, the language "as required by that creed or religion" is necessary to limit protection only to those practices a person sincerely believes are required by his or her religion. It is the court's interpretation of the statute, and not the words of the statute, which thwarts the legislative intent.

The case should be remanded to the Superior Court for a determination whether the plaintiffs sincerely believed that their religion forbade them from working on Christmas.[4] The issue on remand is purely one of credibility. Any inquiry into the doctrines of the Roman Catholic Church and any testimony by religious authorities is unnecessary as both irrelevant to the inquiry and in violation of the establishment clauses. If, on remand, the plaintiffs satisfy their burden of showing a sincerely held belief that their religion requires them to abstain from servile work on Christmas, the burden would then shift to the defendant to prove that undue hardship would result from any accommodation made to meet the plaintiffs' religious needs. See G. L. c. 151B, § 4 (1A).

---

[4]Remand is necessary because there is a genuine factual dispute as to the sincerity of the plaintiffs' beliefs that they must abstain from work on holy days. The plaintiffs allege in their affidavits a belief that Christmas is a holy day of obligation, that Christmas is the most significant occasion of the Church year, and that working on Christmas offends the requirements of their religion. The defendant, however, asserts in an affidavit that the plaintiffs have worked on other holy days of obligation, thereby questioning the sincerity of the plaintiffs' beliefs.