Fecteau, J.
This matter is before the court on defendant’s, Saint Vincent Hospital (“Saint Vincent”), motion for partial summary judgment of plaintiffs, Tammy Derry ("Mrs. Derry”) and James Deny’s, complaint as it relates to the hospital as an individual defendant. Plaintiffs have brought claims against Saint Vincent for: 1) Violation of 42 U.S.C.A., Sec. 1395dd,the Emergency Medical Treatment and Active Labor Act ("EMTALA”); 2) Negligence; 3) Wrongful Death; and 4) Intentional and/or Negligent Infliction of Emotional Distress. Saint Vincent’s present motion speaks solely to its alleged liability under EMTALA and more specifically whether it qualifies for tort immunity as a charitable organization such that any judgment against it for violation of EMTALA is limited to no more than twenty thousand dollars ($20,000) per G.Lc. 231, Sec. 85K. The plaintiffs assert that EMTALA preempts the $20,000 liability cap provided by G.L.c. 23 1, Sec. 85K and further that any violation of EMTALA is not an action based in tort such that the liability cap doesn’t apply. The plaintiffs also allege that, even if G.L.c. 231, Sec. 85K is found to apply in this case, genuine issues of material fact exist regarding whether the violation of EMTALA was committed in the course of an activity carried on to accomplish the charitable purpose of Saint Vincent. For the following reasons the defendant’s motion for partial summary judgment is ALLOWED.

FACTUAL BACKGROUND

Saint Vincent’s Charter dated April 12, 1898 states that incorporation was for the purpose of “furnishing medical and surgical care and treatment for persons requiring the same . . .’’In September 19, 1983, Saint Vincent filed an Amendment with the Secretary of State’s Office amending both the name of the corporation to Saint Vincent Healthcare System, Inc. and its official purpose, stating the purpose as “to develop, operate, and maintain a healthcare system ... to promote the public health and welfare . . .
“Sometime on the evening of July 8,1996, Mrs. Derry, was admitted to Saint Vincent Hospital Emergency Department complaining of vaginal bleeding and contractions at 245// weeks pregnant. While Mrs. Derry was at Saint Vincent the decision was made to transfer her to the Medical Center of Central Massachusetts-Memorial Campus (“MCCM”), where her unborn child later died.
Between the time of Mrs. Derry’s being admitted to Saint Vincent and her transfer and admittance to MCCM the plaintiffs allege that hospital employee’s failed to properly screen, evaluate, treat, and/or stabilize her condition or the condition of her unborn child such that by the time she had arrived at MCCM there had occurred significant deterioration of the fetal condition. On May 27, 1997, Saint Vincent was surveyed by the Massachusetts Division of Health Care Quality. This survey was based on a patient dumping complaint made on behalf of the plaintiffs in this matter. Specifically, this survey was based on an allegation of non-compliance with the requirements of 42 C.F.R. Sec. 489.24. As a result of this survey, Saint Vincent was found to have violated the requirements of 42 C F.R. Sec. 489.24 based on failure to provide a medical screening examination, stabilization of medical condition, and failure to effectuate an appropriate transfer. To remedy this violation, Saint Vincent, in or about July of 1997, promulgated new policies and procedures.

DISCUSSION

Summary judgment shall be granted where there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Comm’ r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, therefore, she is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the moving party establishes the absence of a triable issue, in order to defeat a motion for summary judgment, the opposing party must respond and allege facts which would establish the existence of disputed material facts. Id.
A judge, when ruling on a motion for summary judgment must consider “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether summary judgment is appropriate.” Flesner v. Technical Communications Corporation et al., 410 Mass. 805, 807 (1991). Where no genuine issue of material fact exists, “the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Id., citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
“The scope of the authority of this court to interpret and apply statutes is limited by its constitutional role as [a] judicial, rather than [a] legislative body.” Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 538 (1996). Courts must construe statutes as they are written. See id., citing Brennan v. Election Comm'rs of Boston, 310 Mass 784, 789 (1942). “Statutory Language is the principal source of insight into (1)egislative purpose.” Id., citing Hoffman v. Howmedia, Inc., 373 Mass. 32, 37 (1977), and Commonwealth v. Lighffoot, 391 Mass. 718, 720 (1984). If the language of the statute is “ ‘fairly susceptible [of] construction that would lead to a logical and sensible result’ [the court] will construe it so ‘as to make [it an] effectual piece of legislation in harmony with common sense and sound reason.” Commonwealth v. Williams, 427 Mass. 59, 62 (1998) (citation omitted).
“A statute, [however], should not be interpreted to require a radical change in established policy or existing law if the act does not manifest any intent that such a change should be effected.” Hollstein v. Con *633 tributory Retirement Appeal Bd., 47 Mass.App.Ct. 109, 112 (1999), citing Dexter v. Commissioner of Corps & Tax’n, 316 Mass. 31, 38 (1944).
42 U.S.C.A. §1395dd(d)(2)(A) states that:
Any individual who suffers personal harm as a direct result of a participating hospital’s violation of a requirement of this Section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.
The statute states further, in 42 U.S.C.A. §1395dd(d)(2)(A), that “(t]he provisions of this Section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this Section.”
G.L.c. 231, Sec. 85K states in relevant part that:
It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs.
No Massachusetts’ court has ruled on whether or not the liability cap provided for by G.L.c. 231, Sec. 85K applies to claims brought under EMTALA. Other jurisdictions, however, have dealt with similar issues. The most persuasive authority on this point comes from the Fourth Circuit where the United States Court of Appeal in Power v. Arlington Hospital Assoc., 42 F.3d 851 (1994), found that Virginia’s liability limit for tax-exempt hospitals applied to claims brought under EMTALA. In Powers, the plaintiff alleged that the defendant hospital violated EMTALA by failing to provide her with an appropriate medical screening once she arrived at the emergency room and transferring her to another hospital while she was still in an unstable condition. Power v. Arlington Hospital Assoc., 42 F.3d 851, 853-54 (1994). After a jury verdict awarding damages to the plaintiff the defendant hospital appealed the decision based partly on the district court’s finding that Virginia’s liability limit for tax exempt hospitals did not apply to EMTALA claims. See id.
The Virginia statute at issue limited the liability “of certain charitable and tax-exempt hospitals for ‘negligence or other tort’ up to the limits of the hospital’s insurance.” See id., citing Va. Code Ann. Sec. 8.01-38 (“A hospital which is exempt from taxation... and which is insured against liability for negligence or other tort in an amount no less than $500,000 for each occurrence shall not be liable for damage in excess of the limits of such insurance ...”). In response to plaintiffs arguments that a claim brought under EMTALA was not based in tort for the purposes of limiting liability, the court stated that ”[t]he fact that the duty giving rise to tort liability in this case arises from the federal statutory requirements in EMTALA, rather than common law, does not mean that Power’s suit does not sound in tort.” See id. at 865. Noting EMTALA’s express adoption of state imposed limitations on damages for personal injury the Appeals Court found that Virginia’s limit on liability for charitable organizations applied to claims brought under EMTALA, as well as those claims based in common law tort or negligence.
In this case, it is undisputed that Saint Vincent at all relevant times qualified as a charitable organization for the purposes of G.L.c. 231, Sec. 85K.[1] The statute’s $20,000 liability cap applies to any claims that may be brought against Saint Vincent in common law negligence or tort where the complained of acts were committed in the course of an activity carried on to directly accomplish the charitable goals of the hospital. The next issue before this court then is whether or not an EMTALA claim, under Massachusetts’ law, may be said to lay in tort. In Powers, the court relied on settled Virginia case law which defined a tort as “a civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie” and as “the violation of some duty owing to the plaintiff imposed by the general law or otherwise.” See id. In Massachusetts, while no definitive definition as been annunciated, it has been found that “the key variable in determining whether claims sound in tort is "the substantive quality of the claims. "Wolfe v. Ford Motor Co., 386 Mass. 95, 100 (1982). “A tort is a civil wrong (as distinguished from a crime), other than a breach of contract, for which ... the law . . . provides a remedy.” Ankiewics v. Kinder, 408 Mass. 792, 795 (1990). “All torts share the elements of duty, breach of that duty, and damages arising from that breach.” Id. (The Supreme Judicial Court rejected the lower court’s ruling, that “statutory causes of action created by the Legislature out of whole cloth categorically do not sound in tort, in finding that the lead paint prevention act did in fact impose tort liability such that any claim thereunder fell within the scope of the Massachusetts contribution statute.)
EMTALA states specifically that ”[a]ny individual who suffers harm as a result of a participating hospital’s violation” of the statute may bring a claim thereunder. EMTALA also allows for the individual plaintiff to “obtain those damages available for personal injury under the law of the State in which the hospital is located.” It seems clear to this court that, after a fair reading of the language 42 U.S.C.A. Sec. 1395dd, the substantive qualify of the EMTALA civil action clearly sounds in tort. Thus, the $20,000 liability cap for charitable organizations, as stated in G.L.c. 231, Sec. 85K, will apply in this case if it is shown that the torts complained of by the plaintiffs were “committed in the course of any charity carried on to accom *634 plish directly the charitable purpose of [Saint Vincent].” Harlow v. Chin, 405 Mass. 697, 715 (1989).
In their complaint Plaintiffs allege that Saint Vincent, in violation of EMTALA, failed to properly screen, evaluate, treat, and/or stabilize Mrs. Derry’s condition or the condition of her unborn child before transfer to MCCM. The plaintiffs now assert that “the very act of violating EMTALA is a defacto contravention of [Saint Vincent’s] charitable purpose because ‘patient dumping’ does not promote public health through various healthcare activities and the hospital.” Plaintiffs' Memorandum of law in Opposition to Defendant, Saint Vincent Hospital’s Motion for Partial Summary Judgment Limiting Liability for the Violation of 42 U.S.C. Sec. 1395 dd. at pg. 12. Essentially plaintiffs ask this court to find that any claims brought under EMTALA, irregardless of whether or not such claims lie in tort, cannot fall within the language of G.L.c. 231, Sec. 85K because a violation of EMTALA would not promote the hospital’s charitable purposes. Plaintiffs’ circular argument on this issue is unpersuasive and not the position of this court.
If the court were to accept the plaintiffs’ position the limited liability for charitable organizations provided for by the legislature in G.L.c. 231, Sec. 85K would be meaningless in those cases where the moving party has brought claims under EMTALA. Since this court has already found that claims under EMTALA lie in tort and thus fall within those causes of action to which G.L.c. 231, Sec. 85K applies, it would be illogical for it to now find that the liability cap for charitable organizations does not apply where violations of EMTALA have been alleged.
Finally, the court must address the questions of preemption raised by the parties in this matter. The Supremacy Clause of Art. VI of the United States Constitution “provides Congress with the power to pre-empt state law.” Louisiana Public Service Commission v. Federal Communication Commission, 476 U.S. 355, 368-69 (1986). Preemption may occur when “Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is outright or actual conflict between federal and state law, e.g. where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.” Id. (citations omitted). Where Congress has, however, “considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a ‘reliable indicium of congressional intent to state authority, there is no need to infer congressional intent to preempt state laws from the substantive provisions’ of the legislation.” Cippollone v. Liggett Group, Inc., 505 U.S. 504, 517-18 (1992).
The language of EMTALA makes clear Congress’ intention that no State or local laws are to be preempted by the provisions of said statute, “except to the extent that ... [a state or local law] directly conflicts with a requirement of this Section.” 42 U.S.C.A. §1395dd(d)(2)(A). In spite of Congress’ express language, Plaintiff argues that the $20,000 liability limit imposed by Massachusetts law is so small an amount that it directly conflicts with the goals of EMTALA. However, even "if there is a direct conflict,... preemption analysis is inappropriate when, as with Sec. 1395dd(d)(2)(A), a federal statute expressly incorporates state law.” Power v. Arlington Hospital Assoc., 42 F.3d. 851, 864 (4th Cir. 1994). In this case, EMTALA states specifically that a plaintiff bringing claims under it may “obtain those damages available for personal injury under the law of the State in which the hospital is located.” 42 U.S.C.A. § 1395dd(d)(2)(A). Massachusetts allows a plaintiff bringing claims under EMTALA to recover damages up to $20,000. Simply because a party is not satisfied with the amount of damages available under state law for EMTALA claims doesn’t mean there is a direct conflict between state and federal law such that the doctrine of preemption applies.[2] Thus, since there is no direct conflict between state and federal law in this case the preemption doctrine doesn’t apply.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s, Saint Vincent Hospital’s, motion for partial summary judgment limiting liability for the violation of 42 U.S.C. Sec. 1395dd is ALLOWED.

 Plaintiffs in their Memorandum of Law in Opposition to Defendant, Saint Vincent Hospital’s Motion for Partial Summary Judgment Limiting Liability for the Violation of 42 U.S.C. Sec. 1395dd, state that “SVH [(Saint Vincent)] was a charitable corporation as of July 8, 1996 . . .”

Plaintiff in their Memorandum of Law in Opposition to Defendant, Saint Vincent Hospital’s Motion for Partial Summary Judgment for the Violation of 42 U.S.C. Sec. 1395 cite Williams v. County Cook, 1997 WL 428534 (N.D.Ill. July 24, 1997), for the proposition that a state’s limiting of liability for charitable institutions or public entities may in some instances, due to the amount of recoverable damages allowed, place the state law in direct conflict with EMTALA. In Williams, however, the state law involved provided complete immunity for local public entities against claims such as those brought under EMTALA such that compliance with federal and state law was deemed to be, for all intent and purposes, physically impossible by the court. Massachusetts has only limited the amount recoverable against charitable institutions, it has not given them complete immunity. It is for the legislature, not this court, to decide the amount of liability a charitable institution may face. As long as the state legislature provides some relief for plaintiffs bringing claims under EMTALA against charitable institutions it can not be said that the state and federal laws are in direct conflict.