ANNE M. HORNUNG, APPELLEE, V. LARRY L. HORNUNG, APPELLANT.

485 N.W.2d 335

Filed March 24, 1992. No. A-89-1372.

David J. Warnemunde, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellant.

Richard B. Register for appellee.

SIEVERS, Chief Judge, and MILLER-LERMAN and WRIGHT, Judges.

SIEVERS, Chief Judge.

Larry L. Hornung appeals the decision of the district court for Platte County, which orders him to have his minor children attend Catholic Mass each weekend during visitation or return them to their mother on Saturday evening to allow them to attend Mass with her on Sunday morning. We reverse, and remand for further proceedings.

The marriage of Larry and Anne M. Hornung was dissolved by decree on September 30, 1988, and custody of the two minor children was awarded to the mother subject to visitation rights of the father. The children, Joseph and Lucas, were born August 9, 1976, and August 27, 1979, respectively. The father's visitation rights, established by the decree, include visitation every weekend from June 1 through August 15, beginning at 5 p.m. on Friday and ending at 8 p.m. on Sunday. During the balance of the year, the father has visitation every other weekend at the same times.

On August 8, 1989, the mother filed a motion seeking "an Order compelling the Respondent [Larry Hornung] to have the children attend church regularly while on his visitations or return the minor children at least twice per month on Saturday evening so the children may attend Sunday morning church services." The mother testified that she is a Catholic and that the children attend church with her. She testified that it is her belief that it is a mortal sin not to attend church each weekend. The parties were married in the Catholic Church and agreed to raise the children as Catholics. The father testified that he does not discourage the children from going to church, that they are allowed to attend church when they ask to go, and that when they are at his home in Tarnov, he makes sure they get up and go to church on Sunday mornings. However, on some weekends when they are not in Tarnov or have other activities, he does not have them go to church. At the time of the divorce decree, a supplemental order was entered which provides in relevant part: "[T]he person having visitation may take the children to such reasonable places for such reasonable activities as such person may determine."

The district court's order of October 20, 1989, which is at issue here states:

Respondent shall, whenever the minor children are in his custody for a weekend period, either:

1. Have the children attend Mass each weekend, either Saturday evening or Sunday morning, or

2. Return the children to the Petitioner at 10:00 p.m. Saturday and pick them up at 12:00 a.m. [sic] on Sunday, to allow the children to attend Mass with the Petitioner.

The father makes two assignments of error which we shall discuss: (1) The district court erred in sustaining the mother's motion, as she neither pled nor proved a material change of circumstances warranting a modification of the decree, and (2) the district court erred in sustaining the mother's motion, as she failed to prove that the father's conduct or omission posed an immediate and substantial threat to the temporal health and well-being of the children.

In dissolution of marriage actions, determinations as to visitation with minor children are matters initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion by the trial judge. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991).

Nebraska law is clear that a party seeking to modify a marital dissolution decree concerning custody, support, or *visitation* of a child has the burden to show a material change of circumstances affecting the best interests of the child. See *Pattrin v. Pattrin*, 239 Neb. 844, 479 N.W.2d 122 (1992). When considering visitation rights, the primary and paramount consideration of the court is the best interests of the child. See, Neb. Rev. Stat. § 42-364 (Reissue 1988); *Hickenbottom v. Hickenbottom, supra.*

The mother's motion which gave rise to the district court order under review here does not allege a material change of circumstances. Nonetheless, the effect of the motion, if granted, would clearly be to modify the original decree because the father's visitation rights would be substantially changed. The original decree of dissolution had no requirement that the father make the children attend Mass or, alternatively, return them to the mother on Saturday evenings until Sunday noon so that they could attend Mass with her. To impose such a requirement on the father is to modify the rights of the father. The father either gives up 14 hours of his weekend with the children, including one of the nights, or he has them go to Mass.

The journal entry of October 20, 1989, by the district court for Platte County makes no finding of a material change of circumstances that would warrant a change in the father's

visitation. Our de novo review of the evidence fails to reveal any material change of circumstances.

The evidence offered by the mother regarding the motion shows only that she is a Catholic, that the children are being raised as Catholics, and that under her religion it is a mortal sin not to attend church each weekend. The mother testified that the father has told her that the children do not need to go to church when they are with him and that what he does with the children is his business. There is no evidence as to what the church attendance practices of the family or the children were prior to the entry of the divorce decree.

To find a material change of circumstances, or the absence thereof, we must compare the predecree practices of the Hornung family with their current practices. There is insufficient evidence in the record upon which to make a comparison to determine if there has or has not been a material change of circumstances. Accordingly, we hold that it was an abuse of discretion for the district court to change the father's visitation.

The father's second assignment of error is that the district court committed error because there was no showing that his conduct, with respect to the religious activity of the children, posed an immediate and substantial threat to the temporal health and well-being of the children. Because we remand the cause, it is important to discuss the second assignment. Due to the nature of the relief sought by the mother, this is not merely a matter of proving a material change of circumstances, since the mother's motion takes us into the sensitive arena of church-state relationships.

To start our analysis, we observe that in Nebraska the custodial parent normally has the right to control the religious training of the child. See *Goodman v. Goodman*, 180 Neb. 83, 141 N.W.2d 445 (1966). Accordingly, the mother, as custodial parent, may raise the children as Catholic if she chooses. This case does not involve a clash of divorced parents with differing and opposing religious philosophies, such as was seen in *LeDoux v. LeDoux*, 234 Neb. 479, 452 N.W.2d 1 (1990) (Catholic versus Jehovah's Witnesses) and *Zummo v. Zummo*, 394 Pa. Super. 30, 574 A.2d 1130 (1990) (Catholic versus

10

Jewish). Instead, it involves the extent to which a court can properly assist and support the custodial parent's choice of religion for minor children, when the parent having visitation does not espouse an opposing religion, but merely chooses not to make the children go to Catholic Mass every weekend that he has visitation.

In this case, the evidence shows that the father sometimes chooses not to have the children attend church during visitation. At other times, they do attend during visitation, but the frequency of attendance cannot be determined from the record. However, it is clear that the order of the district court is tantamount to a judicial seal of approval on the mother's belief that it is sinful for the children not to attend Mass every weekend, even when they are not with her.

It is not impermissible for a court to become involved in the religious upbringing of the children of a divorce. However, when doing so, it must be recognized that there is a sensitive interplay between consideration of the child's best interests and the constitutional requirement that government maintain religious impartiality and avoid regulating religious beliefs. See *LeDoux v. LeDoux, supra.* Here, the clash is between the parents' differing levels of belief and commitment rather than between conflicting dogmas.

In *LeDoux*, a noncustodial father appealed a dissolution decree insofar as it ordered him to refrain from exposing, or permitting any other person to expose, his minor children to any religious practices or teachings inconsistent with the Catholic religion. The trial court's decision, which ordered the father, a Jehovah's Witness, to stop exposing his children to religious practices or teachings inconsistent with the Catholic religion chosen by the custodial mother, was affirmed by the Nebraska Supreme Court. There was evidence presented regarding the differences between the Jehovah's Witnesses faith and other religions. For example, members of that religion are counseled strongly against allowing their children to participate in sports activities with people outside the congregation and are discouraged from participation in organizations such as Boy Scouts or Cub Scouts. Jehovah's Witnesses are taught that higher education is only for purely vocational purposes; that

there is only one holiday, that being the memorial of the death of Christ; and that patriotism is divisive.

A clinical psychologist who had counseled one of the *LeDoux* children testified at trial. This witness related conflicts between the Catholic and Jehovah's Witnesses religions and stated that the conflicts were obvious contributing factors to the stress felt and manifested by the LeDoux child. This witness also testified that the child involved was diagnosable as having a maladjustment problem, that he was under significant stress, and that the child could not tolerate visitation with the father for more than a few days. *Id*.

The Nebraska Supreme Court held that notwithstanding the constitutional prohibition against regulation of religious belief, the best interests of the child test, used to determine visitation issues, did not prevent the court from inquiring whether religious beliefs threaten the health and well-being of a child. *Id*. Further, it was held in *LeDoux* that prohibiting courts from considering religious factors under any circumstances would blind courts to important elements bearing on the best interests of the child. Accordingly, the court then held:

> Thus, when a court finds that particular religious practices pose an immediate and substantial threat to a child's temporal well-being, a court may fashion an order aimed at protecting the child from that threat. . . . In so doing, a court must narrowly tailor its order so as to result in the least possible intrusion upon the constitutionally protected interests of the parent.

(Citations omitted.) *LeDoux*, 234 Neb. at 486, 452 N.W.2d at 5.

Using this standard and the evidence present in the record of harm to one of the children, the Supreme Court, in *LeDoux*, affirmed the trial court's order, which foreclosed the exposure of the children to those practices and teachings which were inconsistent with the Catholic religion.

In contrast to *LeDoux*, there is no evidence here that the failure of the children to be at Mass during the father's visitation weekends poses an immediate and substantial threat to the temporal health and well-being of Joseph and Lucas Hornung. Without such evidence, the order of the district court requiring the noncustodial father to either have his children at

Mass every weekend or give up a substantial portion of his weekly visitation so that the children can go to Mass with their mother cannot be justified.

We observe that even if a material change of circumstances regarding church attendance was proven, there would still have to be an evidentiary showing that the temporal well-being of the children is immediately and substantially threatened by the failure of the noncustodial parent to affirmatively enforce the custodial parent's religious belief before the court's constitutionally required religious neutrality is abandoned.

For these reasons, the October 20, 1989, decision of the district court for Platte County, Nebraska, is hereby reversed and vacated, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.