Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/27/2019 09:09 AM CDT

Elizabeth A. Gomez, now known as Elizabeth A. Tonniges, appellant, v. Patrick W. Gomez, appellee.

___ N.W.2d ___

Filed July 5, 2019.    No. S-18-894.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.
2. **Contracts: Evidence.** Contracts found to be ambiguous present a question of fact and permit the consideration of extrinsic evidence to determine the meaning of the contract.
3. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.
4. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.
5. **Visitation.** A party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed in part, and in part vacated.

Aaron F. Smeall and Jacob A. Acers, of Smith, Slusky, Pohren & Rogers, L.L.P., for appellant.

Adam R. Little, of Ballew Hazen, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

In the course of their divorce proceedings, Patrick W. Gomez and Elizabeth A. Gomez, now known as Elizabeth A. Tonniges, agreed to a stipulated parenting plan. That plan, which was later incorporated in the decree dissolving their marriage, gave Patrick and Elizabeth joint legal and physical custody of their two children and set forth a schedule in which the parents would exercise parenting time. The parenting plan also included a provision that the children "will be enrolled and be participants in the Catholic religion" and set forth several specific Catholic religious activities in which the children would participate. Attendance at Catholic Mass was not mentioned.

Years later, Patrick filed a motion alleging that Elizabeth was not complying with the language in the parenting plan regarding the children's religious participation. In response to Patrick's motion, the district court entered an order requiring Elizabeth either to bring the children to Catholic Mass every weekend in which she was exercising parenting time or to allow Patrick to take the children during her parenting time. It also required the children to attend Catholic Mass on Catholic "Holy Days of Obligation" and required Patrick and Elizabeth to coordinate to ensure their attendance on those days. We find that the parenting plan did not require the Mass attendance ordered by the district court. Accordingly, we vacate that portion of the district court's order requiring Mass attendance. Because there are other parts of the order not challenged by Elizabeth, we otherwise affirm.

## BACKGROUND

*Dissolution Decree and*
*Parenting Plan.*

Patrick and Elizabeth were married in April 2010. During their marriage, the parties had two children, one born in 2011 and the other born in 2013.

Approximately 5 years after their marriage, Elizabeth filed an action for dissolution. In that action, the parties agreed to a stipulated parenting plan that was later approved by the district court and incorporated in a decree dissolving the marriage. Several provisions of that parenting plan are relevant to this appeal.

First, the parenting plan provided that Patrick and Elizabeth would have joint legal and physical custody of their children. With respect to their joint legal custody, the plan elaborated that Patrick and Elizabeth would have "mutual authority and responsibility for making fundamental decisions regarding such things as education, religion and non-emergency medical and/or dental treatment." The plan further required that Patrick and Elizabeth notify each other before making any decision regarding school enrollment, health care, or "participation in religious activities" and that they "discuss these three areas with one another in an effort to reach a consensus on those issues."

The parenting plan also provided details as to how Patrick and Elizabeth would exercise their joint physical custody of the children. Under the plan, Patrick and Elizabeth had equal parenting time with their children. In the ordinary course, one parent would have the children 5 days one week and 2 days the next week and vice versa the following week. The parenting plan also addressed holiday and vacation parenting time.

In addition, the parenting plan included the following provision:

> The parents agree that the children will be enrolled and be participants in the Catholic religion (including First Communion and Confirmation). Further, [Elizabeth] shall allow for the children to attend their formal class (CCD) on her Wednesday parenting time. [Elizabeth] will provide transportation to and from Wednesday class on her parenting time, and if at anytime [Elizabeth] is

not capable of transporting the children, she shall advise [Patrick] who will then provide transportation.

*Patrick's Motion and District*
*Court's Order.*

Approximately 2 years after the entry of the decree dissolving the marriage, Patrick filed a motion styled as a "Motion to Enforce Decree and Parenting Plan." In the motion, Patrick alleged that Elizabeth was not complying with the provision of the parenting plan requiring that the children "be enrolled and be participants in the Catholic religion." Patrick alleged that Elizabeth was violating this provision by taking the children to Lutheran church services and activities during her parenting time. He asked that the court enter an order allowing him to take the children to Catholic Mass during Elizabeth's parenting time and prohibiting Elizabeth from allowing the children to participate in activities of any other religious faith.

At a hearing on Patrick's motion, the district court stated that it interpreted the parenting plan's language that the children would be "participants in the Catholic religion" to require the children to follow the tenets of the Catholic faith. The court continued, "[O]ne of the tenets according to [Patrick] is the children have to go to weekend . . . mass. . . . And, also, mass on . . . Holy Days of Obligation."

The district court later entered a written order. In the order, the district court reiterated its conclusion that the language providing that the children would "be enrolled and be participants in the Catholic religion" required the parties to follow the tenets of the Catholic faith and that those tenets required attendance at Catholic Mass every weekend and on Holy Days of Obligation. Accordingly, the order provided that the children must attend Catholic Mass every weekend and provided that if Elizabeth was not taking the children during her parenting time, she was required to allow them to attend with Patrick. The order also required the children to attend Mass

on all Catholic Holy Days of Obligation and required the parents to coordinate to ensure their attendance on those days. Further, the order required the children to attend Catholic Mass while the parents were exercising holiday or vacation parenting time "if it is otherwise feasible to do so." Finally, the order provided that neither party may "take or enroll" the children "in any religion other than the Catholic religion" during their parenting time unless agreed to in writing by both parties.

Elizabeth timely appealed the district court's order.

## ASSIGNMENTS OF ERROR

Elizabeth assigns, restated, that the district court erred in (1) interpreting the decree to require attendance at Catholic Mass and (2) granting relief greater than requested by Patrick's motion.

## STANDARD OF REVIEW

[1] The meaning of a divorce decree presents a question of law. Accordingly, an appellate court reviews the interpretation of that decree independently of a determination reached by the court below. See *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

## ANALYSIS

*Standards Governing Interpretation*
*of Decree.*

Elizabeth asks us to reverse the order of the district court to the extent it requires the children to attend Catholic Mass every weekend and on Catholic Holy Days of Obligation. While Patrick's motion was styled as a motion to enforce the decree, the district court's order did not provide relief other than its interpretation of what the decree required. In doing so, the district court appears to have granted declaratory relief. We have recognized that our case law has generally permitted courts to resolve genuine disputes over the meaning of

language in a dissolution decree through declaratory relief. See *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018). Both parties also appear to understand the district court's order as providing declaratory relief, focusing their arguments on whether the district court properly interpreted the decree. Before turning to the parties' respective positions on that point, we pause to review the standards that govern the interpretation of the decree.

As noted above, the parenting plan was agreed to by Patrick and Elizabeth and presented to the district court by stipulation. We have recognized, however, that once a court, as here, adopts such an agreement and sets it forth as a judgment of the court, "the contractual character of the . . . agreement is subsumed into the court-ordered judgment." *Rice v. Webb*, 287 Neb. 712, 723, 844 N.W.2d 290, 298-99 (2014).

[2,3] The fact that we are reviewing a judgment as opposed to a contract matters. Contracts found to be ambiguous present a question of fact and permit the consideration of extrinsic evidence to determine the meaning of the contract. See *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015). Not so with decrees. See *Carlson v. Carlson, supra*. A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Bayne v. Bayne, supra*. The parties' subjective intentions and interpretations of the language or what the court entering the decree intended are irrelevant. See, *id.*; *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986). This is so even if the language of the decree is ambiguous. See *Bayne v. Bayne, supra*. See, also, *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015) (resolving meaning of ambiguous dissolution decree as matter of law).

With these standards in mind, we proceed to consider the interpretations of the decree offered by the parties.

*Questions Raised by District Court's*
*Interpretation of Decree.*

Patrick and Elizabeth agree that the parenting plan requires that the children take part in those Catholic religious programs explicitly listed therein: "First Communion and Confirmation" and "CCD" classes. The parties divide on whether the parenting plan imposed additional obligations on the parents related to the children's attendance at Catholic Mass. On one side is the interpretation advanced by Elizabeth: The decree requires the children to take part in those Catholic activities specifically mentioned, but does not impose additional obligations such as Mass attendance. Patrick counters that the language requiring that the children "be enrolled and be participants in the Catholic religion" means that the parents are obligated to raise the children in the Catholic faith and are thus obligated to facilitate the children's observance of all the tenets thereof.

[4] Patrick's interpretation was adopted by the district court, but we note that it also raises some difficult questions, both in the context of this case and beyond. Starting with this case, even if Patrick were correct that the parenting plan requires the children to follow all tenets of the Catholic faith, it is not entirely clear how the district court reached the conclusion that the tenets of the Catholic faith required the Mass attendance it ordered. At the hearing on Patrick's motion, the district court suggested it credited Patrick's view that Mass attendance every weekend and on Holy Days of Obligation was required under the Catholic faith. Patrick references an affidavit attached to his motion which he contends set forth his understanding of the tenets of the Catholic faith as it relates to Mass attendance, but that affidavit is not a part of our bill of exceptions. A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Heineman v. Evangelical Luth. Good Sam. Soc.*, 300 Neb. 187, 912 N.W.2d

751 (2018). It thus does not appear there is anything in our record supporting the district court's conclusion that the tenets of the Catholic faith require Mass attendance consistent with the district court's order.

Even setting aside the question of how the district court determined the tenets of the Catholic faith regarding Mass attendance in this case, a more fundamental question remains. Patrick's argument is essentially that the parenting plan requires the children to do all that the Catholic Church requires of its adherents. An inescapable consequence of this interpretation is that the task of deciding what a person must do to be a faithful Catholic is placed squarely before civil courts. Patrick hardly runs away from the notion that his interpretation puts courts in the position of determining and enforcing religious doctrine. To the contrary, his brief is replete with citations to Canon Law and he argues not only that it requires Mass attendance but that a failure to comply with such requirements is a mortal sin. Brief for appellee at 5.

While courts are regularly called upon to decide the extent of obligations imposed by earthly regimes, many courts have questioned whether they may just as readily determine what obligations are imposed by a religious faith. Language from opinions of the U.S. Supreme Court, at a minimum, raises questions about whether courts may pass on matters of religious doctrine. See, e.g., *Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872, 887, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) ("[r]epeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim") (superseded by statute as noted in *Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2013)); *Presbyterian Church v. Hull Church*, 393 U.S. 440, 450, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969) ("[test employed by lower court] requires the civil court to determine matters at the very core of a religion—the interpretation of

particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role").

Additionally, many other courts have declined to resolve disputes that would require the resolution of questions of religious doctrine. See, e.g., *Wallace v. ConAgra Foods, Inc.*, 920 F. Supp. 2d 995, 996 (D. Minn. 2013) (dismissing case alleging that food manufacturer misrepresented that its food products were "'100% Kosher'" because it would require court to decide questions of religious doctrine), *vacated and remanded on other grounds* 747 F.3d 1025 (8th Cir. 2014); *Abdelhak v. Jewish Press Inc.*, 411 N.J. Super. 211, 985 A.2d 197 (2009) (affirming dismissal of defamation claim premised on alleged statements that plaintiff did not comply with religious requirements because resolution of claim would require court to pass on matters of religious doctrine); *Pielech v. Massasoit Greyhound, Inc.*, 423 Mass. 534, 542, 668 N.E.2d 1298, 1304 (1996) (holding statute was unconstitutional because it would require courts "to determine what actions and beliefs are required of adherents to the Roman Catholic faith"); *Zumno v. Zumno*, 394 Pa. Super. 30, 574 A.2d 1130 (1990) (declining to enforce prenuptial agreement that children would be raised Jewish because, among other reasons, it would excessively entangle court in religious matters); *Lynch v. Uhlenhopp*, 248 Iowa 68, 78 N.W.2d 491 (1956) (declining to enforce language in divorce decree that children shall be raised in Roman Catholic religion as void for uncertainty). See, also, Jared A. Goldstein, *Is There a "Religious Question" Doctrine? Judicial Authority to Examine Religious Practices and Beliefs*, 54 Cath. U.L. Rev. 497 (2005) (collecting similar cases).

At oral argument, Patrick contended that this court has previously held that a court may consider religious questions in the context of a marital dissolution action, citing *LeDoux v. LeDoux*, 234 Neb. 479, 452 N.W.2d 1 (1990). *LeDoux*, however, held merely that a court may find that a religious practice

poses a threat to a child's "temporal well-being" and fashion relief to protect the child from that threat. 234 Neb. at 486, 452 N.W.2d at 5. Unlike the cases from other jurisdictions cited above, *LeDoux* did not implicate a question of religious doctrine. Furthermore, at least one reported Nebraska appellate decision, *Hornung v. Hornung*, 1 Neb. App. 6, 485 N.W.2d 335 (1992), has language suggesting a court should not decide whether a practice is required by a religion in the context of a dissolution dispute. In *Hornung*, the Nebraska Court of Appeals reversed a district court order requiring a father to attend Catholic Mass with his children and observed that the district court order was "tantamount to a judicial seal of approval on the mother's belief that it is sinful for the children not to attend Mass every weekend." *Id.* at 10, 485 N.W.2d at 337.

As it turns out, we need not resolve the difficult questions raised by the interpretation advanced by Patrick and adopted by the district court. As we will explain, we conclude this interpretation is not consistent with the four corners of the decree itself. But while we need not address the questions discussed above, we note them for the consideration of practitioners or courts considering a parenting plan that would require judicial resolution of questions of religious doctrine.

*Interpretation of Decree.*

As we have noted, it is Patrick's position that Elizabeth was required by the decree to take the children to Mass on weekends and Catholic Holy Days of Obligation when she was exercising parenting time or to give up her parenting time and allow Patrick to take them. Patrick contends that this requirement flows from the language that the children are to "be enrolled and be participants in the Catholic religion." We disagree with Patrick's reading.

Initially, we note that we are not presented with any argument or evidence that the terms "enrolled" and "participants" are used as either legal or religious terms of art. We are thus

left to interpret those words in their ordinary, literal sense. See *Shade v. Kirk*, 227 Neb. 775, 777, 420 N.W.2d 284, 286 (1988) (decree must be interpreted "in light of the literal meaning of the language used"). In its ordinary sense, the word "enrolled" suggests only that the children must be registered in some sense in the Catholic faith. See, The New Oxford American Dictionary 566 (2001) (defining "enroll" as "officially register as a member of an institution or a student on a course"); Merriam-Webster's Collegiate Dictionary 385 (10th ed. 2001) (defining "enroll" as "to insert, register, or enter in a list, catalog, or roll"). We do not understand how the requirement that the children be registered as Catholics in some way also compels the Mass attendance ordered by the district court.

This leaves the word "participants." It is Patrick's position that the children will be "participants" in the Catholic religion only if they adhere to all its required observances. We certainly understand that if the children did so, they would qualify as "participants." But our focus is on what the decree *required.* And the word "participant" on its own suggests only that a person take part in something to some degree. See The New Oxford American Dictionary at 1246 (defining "participant" as "a person who takes part in something"). Indeed, it would not be uncommon for persons to be described as "participants" in a given activity even if they do not take part to the fullest. It is only with qualifying language not present here such as "full" that the word "participants" communicates the level of participation Patrick argues the decree required.

To be sure, the children must take part in the Catholic religion to some degree if they are to be fairly described as "participants." But, as we have noted, the parenting plan explicitly requires the children to participate in "First Communion and Confirmation," as well as "CCD" classes, and Elizabeth concedes that she is obligated to facilitate their involvement in those activities. We do not, however, understand the language of the parenting plan to require Elizabeth to also

facilitate their attendance at Catholic Mass as ordered by the district court.

We find additional support for our interpretation in the decree's complete silence as to the children's attendance at Catholic Mass. The decree specifically sets forth a detailed 2-week rotation regarding the regular exercise of parenting time. It also sets forth a holiday parenting time arrangement, covering various enumerated holidays. Additionally, the decree has specific language requiring Elizabeth to take the children to CCD classes on her parenting time. Nowhere, however, is there any mention of a requirement that the parties either have the children attend Catholic Mass on each parent's parenting time or give up that time to the other parent for the other parent to do so. And despite specific allocation of parenting time on a number of holidays, there is no reference to Catholic Holy Days of Obligation as such or a requirement that the parent exercising parenting time on those days bring the children to Mass on those days. In our view, given its silence on these points, the decree is most reasonably interpreted as not addressing attendance at Catholic Mass. See *Bayne v. Bayne*, 302 Neb. 858, 864, 925 N.W.2d 687, 693 (2019) (decree is to be interpreted to, if possible, "bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation").

Finally, we note that at oral argument, Patrick's counsel contended that the children will be able to participate in the activities specifically mentioned in the decree only if they attend Mass as ordered by the court. We discern nothing in our record indicating that is the case and thus do not consider that argument here.

*Disposition of Appeal.*

[5] As explained above, we conclude that by requiring Elizabeth to either bring the children to Catholic Mass or give up her parenting time, the district court imposed obligations

that were not present in the original decree. The district court's order thus constituted a modification of the decree as opposed to a proper order interpreting it. The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child. See, e.g., *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001). There is no such evidence here. Accordingly, the portions of the district court's order regarding Mass attendance must be vacated.

We note, however, that the district court's order enforcing the decree addressed other issues, which Elizabeth did not appeal. This would include the portion of the district court's order that the parties not allow for the children's participation in religious activities outside the Catholic religion without the written permission of the other parent. Elizabeth did not argue that portion of the district court's order was erroneous and explicitly stated in her reply brief she was not challenging it. As the rest of the order enforcing the decree is not challenged, we affirm in part.

## CONCLUSION

We find that the parties' parenting plan did not require the children to attend Catholic Mass. Accordingly, we vacate those portions of the decree ordering such attendance, but otherwise affirm.

AFFIRMED IN PART, AND IN PART VACATED.