IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ROTH V. ROTH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ROBYN L. ROTH, APPELLANT,

V.

DOUGLAS D. ROTH, APPELLEE.

Filed March 24, 2020.    No. A-19-778.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellant.

Audrey A. Rowley, of Rowley Law, L.L.C., for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Robyn L. Roth appeals from the order of the district court for Buffalo County, which denied her motion to hold Douglas D. Roth in contempt for failing to comply with various provisions of the parties' divorce decree. Because the court did not abuse its discretion in finding Douglas was not in contempt of the decree, we affirm.

BACKGROUND

The parties were divorced in November 2015. In the decree of dissolution, the district court noted that the parties had voluntarily entered into a stipulated property settlement agreement, which the court incorporated by reference and attached to the decree. Pursuant to the settlement agreement, the parties agreed:

2. . . . that [Douglas] shall pay the following spousal support to [Robyn]:
a. Regular Support. $1,000.00 monthly, for a term of five (5) years. . . .

- 1 -

b. Support for Rent. [Douglas] shall pay an additional $690.00 per month, for a period of one (1) year. . . .

c. Medical Bills. [Douglas] shall pay up to, but no more than $2,000.00 of [Robyn's] medical bills.

d. [Robyn's] automobile. [Douglas] shall pay the costs of car insurance on [Robyn's] 2015 Chevrolet Impala, the cost of taxes, the cost of tags, for a period of 5 years, STARTING NOVEMBER 14, 2015. If possible, [Robyn] shall title the car in her own name and remove [Douglas] from the title. [Robyn] shall also obtain car insurance on her own. [Robyn] will provide proof of the costs mentioned in this agreement to [Douglas]. [Douglas] will either make the payments directly to the DMV and insurance agency or will reimburse [Robyn] after providing proof payment made.

In the property division section of the agreement, the parties agreed that they were each to be awarded the automobiles in their possession, with the 2015 Chevrolet Impala being awarded to Robyn. In the section of the agreement addressing the division of liabilities, the parties agreed as follows:

The parties jointly agree that the debt of [Robyn's] Chevrolet Impala will be a joint debt. [Douglas] agrees to be a cosigner of the loan. [Douglas] agrees to make all payments on the loans. First payment is due November 14, 2015. The payment is approximately $7,000 annually. [Douglas] will make the payment on or before its due date every year until the loan is paid in full.

With respect to an equalization payment, the settlement agreement stated:

The parties agree that for purposes of determining an equalization payment that [Douglas'] values on the Joint Property Statement are the values to be used in the calculation. The Distribution is attached herein as Exhibit 'A.' The parties agree that the distribution shows that a payment of approximately $68,600 would be ordered. The parties further agree that there is no equalization payment to be ordered by the Court.

The support ordered in this agreement is $60,000 in regular support, $8,280 in rent support, $2,000 for medical bills, $35,000 of payments for [Robyn's] vehicle, and additional expenses associated with [her] vehicle. The parties agree that the payments of support and payment for additional expenses by [Douglas] to [Robyn] are sufficient to make up for the difference in value of property.

In the attached exhibit A, the Impala, valued at $35,000, was included on Robyn's side of the distribution of assets. Exhibit A also included a $2,000 liability owed to "Dr. Welch" on Robyn's side of the distribution.

On April 3, 2019, Robyn filed a verified motion for an order to show cause in the district court, alleging that Douglas had failed to pay "his portion of the medical bills" as agreed in the property settlement agreement, to reimburse her for the 2018 registration and taxes for the Chevrolet Impala, and to make all payments on the loan for the Impala until it was paid in full. We note that the issue relating to the payment of the 2018 registration and taxes for the Impala was

resolved by the parties and Robyn's motion proceeded to hearing only on the issues relating to the payment of medical bills and payment of the loan on the Impala.

At the show cause hearing on July 1, 2019, the district court heard testimony from both parties with respect to payment of medical bills and the loan on the Chevrolet Impala and received various exhibits, including a copy of the decree with the attached settlement agreement and property distribution.

Douglas testified that the distribution of assets exhibit attached to the settlement agreement reflected the assets and liabilities of which the parties were aware at the time the settlement agreement was negotiated and the decree was entered. He testified that the only medical expenses of which he was aware in 2015 were owed to Welch, an "eye doctor surgeon in Hastings," for $2,000 as referenced in the distribution of assets exhibit. Douglas testified that when the property settlement was being negotiated, he never saw any copies of medical bills from Welch, explaining that "[w]hen [Robyn] left she took all that material". According to Douglas, Robyn never provided him with a bill from Welch, and the dollar amount in the settlement agreement was based upon Robyn's representation as to the amount owed to Welch. Douglas indicated that he contacted Welch's office, which refused to provide him with the necessary information due to "doctor-client privilege." According to Douglas, he did not receive any medical bills from Robyn until March 2019 when he was provided with a bill for amounts incurred with the Physician Network and not Welch. Douglas testified that at the time the parties negotiated the settlement agreement, he was not aware of any outstanding medical bills Robyn had to the Physician Network. Douglas testified, based on his review of the billing documentation from the Physician Network received into evidence, that there would not have been any amounts owed to that medical provider in 2015. On cross-examination, he agreed that the settlement agreement did not require him to pay a medical provider directly, and he testified that there was no reason he could not have simply paid Robyn the $2,000. But he also explained, in response to questioning by the district court, that he needed a bill from the medical provider because he utilized a farm loan to pay Robyn the funds ordered in the decree and the bank required some type of supporting information.

In her testimony, Robyn acknowledged that in 2015, when the settlement agreement was executed, the only outstanding medical bills she had were with Welch and that Welch was not a provider at the Physician Network. Although Robyn testified that the bill to Welch ended up being $4,000 (she had paid about $400 prior to entering into the settlement agreement), she acknowledged that she never provided Douglas with a copy of any medical bills from Welch's office or proof of her payments. Although she referenced some documentation from Welch during her testimony, neither that exhibit nor any other documentation of these expenses or payments made to Welch were offered as evidence during the hearing on her motion for contempt. The only medical bills/documents offered and received into evidence at the hearing were from the Physician Network. One of those exhibits shows that Robyn had a total patient balance of $2,285.69 with the Physician Network as of January 20, 2019. Robyn confirmed that as of November 2015, she did not have any outstanding bills to the Physician Network. The other exhibit, an "Account Inquiry" from the Physician Network, reflected service dates between September 2017 and April 2019. Robyn confirmed that March 2019, when she provided a Physician Network bill to her attorney to give to Douglas' attorney, was the first time she provided any copies of outstanding medical bills;

- 3 -

she also acknowledged that she never provided Douglas with any invoices from or copies of payments she made to Welch.

The parties testified about the payment of insurance and the loan on the Chevrolet Impala. Douglas testified that from November 14, 2015 through November 14, 2018, he made all payments for the car insurance, taxes, and tags, for the Impala. He made the insurance payments through the State Farm agent from whom Robyn had procured insurance. The State Farm agent kept Douglas informed of when the insurance payments were due. Douglas paid the taxes and cost of the tags for the vehicle directly to Robyn after she provided him proof of those expenses. Douglas made four payments of principal and interest of $7,377.85 on the parties' loan for the vehicle secured through American National Bank (the bank), with the first payment being on November 12, 2015 and the last being made on November 15, 2018. The 2019 payment was not yet due when Robyn had an automobile accident in January 2019. Douglas spoke with the insurance agent in mid-January, and based upon that conversation, he understood that "the car was totaled." The loan balance for the vehicle at that time was approximately $13,800.59. After determining the actual cash value of the vehicle, State Farm submitted payment to the bank for the loan balance on or around February 4, and then it distributed the remaining funds ($8,281.06) directly to Robyn. Robyn's testimony was consistent with Douglas' with respect to his car loan and insurance payments.

During his testimony, Douglas was asked if he knew what caused Robyn's automobile accident. He responded that he did not know enough details to give an accurate description, but he testified to his understanding that Robyn received a citation for the accident. The district court sustained Robyn's relevancy objection to Douglas' initial offer of a copy of the county court documentation of the citation and plea associated with the accident. In her testimony, Robyn confirmed that the Chevrolet Impala was totaled in January 2019 and that she was given a citation for the accident. Upon redirect examination by Douglas' attorney, Robyn confirmed that due to the accident, she was given a citation for disobeying a traffic light. Her attorney objected on relevance when Robyn was asked if she signed "a waiver o[r] guilty plea." The court overruled the objection, stating that Robyn "opened the door by making the argument [in her own testimony] that she needs a replacement vehicle." Robyn then agreed that her "guilty plea or waiver" was accepted by the county court, and she testified further about the accident that led to the totaling of the Impala. At the conclusion of this testimony, the district court received a copy of the county court documentation of the citation and plea over Robyn's objection as to its relevance.

During the contempt hearing, Robyn's attorney made two offers of proof. First, while cross-examining Douglas, he asked questions about the parties' attorneys during the divorce proceedings, and Douglas testified that Robyn's current attorney had been her attorney at the time the divorce proceedings were filed. Douglas' attorney objected on the basis of foundation when Douglas was asked whether Robyn had discharged her attorney at some point during the divorce proceedings. After the district court sustained the objection, Robyn's attorney made an offer of proof, establishing that after his discharge during the divorce proceedings, the property settlement agreement was drawn up by Douglas' attorney. The court again sustained Douglas' objection, stating, "It almost sounds as if this is becoming a collateral attack on the legitimacy of the underlying agreement, and I don't think that's appropriate at this time."

Robyn's attorney made a second offer of proof during his cross-examination of Robyn. Robyn confirmed that she had also employed her current attorney at the commencement of the dissolution proceedings, but the district court sustained Douglas' relevance objection when Robyn's attorney asked her if she had discharged him from representing her during the course of the dissolution. Robyn's attorney then made an offer of proof, in which Robyn confirmed that she had discharged her attorney, that she did not have an attorney advise her about the property settlement agreement, and that it was prepared by Douglas' attorney. At the conclusion of the second offer of proof, the court again sustained Douglas' objection.

On July 16, 2019, the district court entered an order, finding insufficient evidence to support a finding of contempt either for Douglas' failure to contribute to Robyn's medical bills or for his alleged failure to make all payments on the Chevrolet Impala.

In addressing the claim that Douglas had failed to pay his share of Robyn's medical bills pursuant to the decree, the district court determined that the language used in "paragraph 2c" of the settlement agreement was ambiguous in that it failed to identify which medical bills were at issue and did not explain how payment was to be made or upon what proof. Regardless of that ambiguity, the court noted that case law required it to resolve the meaning of the decree "'as it appears,' bringing all of its parts into harmony." In doing so, the court first noted that the literal language of the agreement required Douglas to pay "up to, but no more than $2,000.00," which the court found to indicate that the parties contemplated the amount owed could be less. The court stated that Douglas would need an invoice to confirm the actual amount owed, and it observed that he never received one. Next, the court observed that while paragraph 2c omitted any reference to Welch, the distribution of assets exhibit attached to the agreement specifically referred to a $2,000 liability owed to Welch. The court determined that the distribution of assets exhibit had be read in harmony with the rest of the agreement, and it concluded that the fact that the parties specifically referenced a $2,000 liability owed to Welch in the distribution provided strong evidence that the "medical bills" referenced in paragraph 2c were bills associated with Welch. Finally, the court determined that reading the settlement agreement to permit Robyn to submit medical invoices almost 4 years after its execution would not be a fair and reasonable interpretation of the agreement. The court found this especially true because it was undisputed that the only medical bills that existed at the time were owed to Welch. Accordingly, the court found the evidence insufficient to support a finding of contempt for Douglas' failure to contribute to Robyn's medical bills.

After reviewing the provisions of the settlement agreement requiring Douglas to make loan payments on the Chevrolet Impala, the district court addressed Robyn's argument that, although the loan had been paid in full, Douglas owed her additional money for the Impala because its actual cash value was higher than that determined by State Farm and that she was entitled to the difference between those values. The court determined, however, that based upon the literal language used in the settlement agreement, the current actual cash value of the Impala was irrelevant. The court noted that the agreement did not include a provision that Robyn would be entitled to the actual cash value in the event the vehicle was damaged and that it did not require Douglas to replace it with a car of equal value in such an event. The court noted the actual requirements of the agreement (that Douglas would pay the costs of car insurance, pay the taxes, pay the tags, and make all

payments on the loan until the loan was paid in full), and it determined that the evidence showed that Douglas had satisfied those conditions. The court stated, "While [Douglas] did not make the final loan payment himself, the insurance policy he [sic] secured for the car, and paid for, did." The court also found that the agreement did not require Douglas to make the final loan payment, only that it required him to make the loan payments on or before its due date every year until the loan is paid in full," and that he met this condition as well. The court also determined that the portion of the agreement concerning equalization contradicted Robyn's suggestion that she was entitled to recover $35,000, the value of the Impala as noted in the distribution of assets exhibit. The court noted language in the equalization provision of the agreement, stating that no equalization payment would be made and that Douglas' "payments of support and payment for additional expenses" was "sufficient to make up for the difference in value of property." The court concluded that Douglas had made the payments for additional expenses as agreed by the parties and accordingly concluded that the evidence was insufficient to support a finding of contempt for his alleged failure to make all payments on the 2015 Chevrolet Impala.

## ASSIGNMENTS OF ERROR

Robyn argues that the district court erred in (1) determining that Douglas complied with all of the decree's provisions, (2) sustaining Douglas' objections to her offers of proof, (3) finding that Douglas procured the automobile insurance on the vehicle at State Farm, and (4) overruling Robyn's objection to whether she was issued a citation as a result of an accident and to whether she entered a plea to the citation.

Robyn has not presented any argument in support of her fourth assignment of error and has presented minimal argument in support of her second and third assignments of error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020). Accordingly, we have not addressed Robyn's fourth assignment of error and have only addressed her second and third assignments of error to the extent necessary based on the arguments in her brief.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020).

ANALYSIS

*Douglas Not in Contempt.*

The district court found that the evidence presented at the contempt hearing was insufficient to support a finding of contempt either for Douglas' failure to contribute to Robyn's medical bills or for his alleged failure to make all payments on the loan for the Chevrolet Impala. Robyn argues that the court erred in determining that Douglas complied with all of the decree's provisions.

The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Gomez v. Gomez*, 303 Neb. 539, 930 N.W.2d 515 (2019). Contracts found to be ambiguous present a question of fact and permit the consideration of extrinsic evidence to determine the meaning of the contract. *Id.* However, a decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Id.* The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Krejci v. Krejci, supra.* Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence. *Id.* If it is impossible to comply with the order of the court, the failure to comply is not willful. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). Willfulness is a factual determination to be reviewed for clear error. *Id.*

Here the record shows that Douglas made the required payments on the car loan between the time of the decree in November 2015 and November 2018. The 2019 payment was not yet due at the time of Robyn's accident in January 2019. Because the provisions of the property settlement agreement and attached distribution of assets were incorporated into the decree, the meaning of those provisions must be determined from the four corners of the document itself. *Gomez v. Gomez, supra.* Douglas did not make any further payments on the car loan because it was paid off by State Farm as a result of Robyn's accident. Although the Chevrolet Impala was valued at $35,000, there is nothing in the settlement agreement mandating that Robyn be awarded this value or that Douglas replace the vehicle in the event of an accident. The settlement agreement provided that the "support" payments to be made by Douglas were sufficient to make up for any difference in the value of the property awarded to each party. Douglas benefitted by not having to pay the final amount due on the loan at the time of the accident, but as the loan payments were made to the bank and not to Robyn directly, the agreement cannot reasonably be interpreted to mean that Robyn was entitled to any additional payment above and beyond payoff of the final loan amount, regardless of who made that payment. And, Douglas made the insurance payments which resulted in State

Farm making the final loan payment following Robyn's accident. The district court did not abuse its discretion in failing to find Douglas in contempt of the provisions of the settlement agreement requiring him to make payments on the car loan.

As to Robyn's medical bills, the settlement agreement incorporated into the decree required Douglas to pay up to but no more than $2,000 of her medical bills. In interpreting this provision, the district court examined the agreement as a whole and concluded that the distribution of assets exhibit referenced a liability of $2,000 owed to Welch, and it concluded that the "medical bills" referenced in the agreement were likely those associated with Welch. The parties' testimony at the contempt hearing supported the court's conclusion that the medical bills owed at the time of the decree were owed to Welch. Douglas agreed that he could have paid Robyn $2,000, but he testified that he used a farm loan to make the payments required under the decree and that his bank required supporting documentation. The record shows that Robyn never provided copies of any bills owed to Welch. Clearly, Douglas has not made any payments toward the medical bills as contemplated in the decree; however, in concluding that the evidence did not support a finding of contempt with regard to the medical bill provision of the decree, the court implicitly determined that Douglas' failure to pay was not willful. The court did not err in this determination. Nor did it abuse its discretion in failing to find Douglas in contempt of court for failure to pay up to $2,000 of Robyn's medical bills.

*Objections to Offers of Proof.*

Robyn asserts that the district court erred in sustaining Douglas' objections to her offers of proof. Robyn only obliquely addresses this assignment of error in her argument in support of her first assignment of error. She references the fact that her attorney made two offers of proof during the contempt hearing and notes the court's observation that her attorney was seemingly making a collateral attack on the legitimacy of the property settlement agreement. She then states, "In all due respect to the trial court, [Robyn] was simply attempting to point out to the trial court that all of the documents in this case were drafted by [Douglas'] attorney with the help of [Douglas]." Brief for appellant at 7. She notes the contract law principle that ambiguous contracts are construed against the drafter. See *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013). She then argues that any portion of the property settlement agreement that is ambiguous must be construed or interpreted to favor Robyn. However, as noted above, the meaning of the decree and incorporated property settlement agreement, even if ambiguous, are to be determined a matter of law from the four corners of the decree itself, rather than according to contract law principles. See *Gomez v. Gomez*, 303 Neb. 539, 930 N.W.2d 515 (2019). Robyn has not presented any arguments about the evidentiary merits of the court's ruling on her offers of proof, and we decline to address this assignment of error further.

*Automobile Insurance.*

The decree provided that Robyn was to obtain car insurance on her own and to provide Douglas with those costs. It provided further that Douglas was either to make the payments directly to the insurance agency or to reimburse Robyn upon proof of her payment. In her third assignment of error, Robyn takes issue with a misstatement by the district court in its order ruling on her

motion for contempt. In its order, the court stated, "He [Douglas] also secured insurance on the vehicle through State Farm Insurance, naming [Robyn] as the insured." In support of her assignment of error, Robyn quotes some of Douglas' testimony about the insurance arranged by Robyn, and she then argues, "The forgoing finding by [the district court] is not supported by the record and should be revised accordingly." Brief for appellant at 8. While Robyn is correct that the district court incorrectly identified which party obtained the car insurance, this misstatement by the court has no bearing on the court's determination that Douglas was not in contempt of the decree, and we decline to address this assignment of error further.

## CONCLUSION

The district court did not abuse its discretion in finding Douglas was not in contempt of the decree.

AFFIRMED.